HASELMAIER, by guardian *ad litem*, Respondent, vs. MIL-
    WAUKEE ELECTRIC RAILWAY & LIGHT COMPANY,
    Appellant.

*November 12—December 9, 1924.*

*Negligence: Subjecting oneself to known hazard: Assumption of
    risk: Contributory negligence: Electricity: Boy touching live
    wire: Treble damages: To what violations applicable.*

1. One who voluntarily subjects himself to danger or hazard assumes the risk or is contributorily negligent, as the case may be, though he does not fully appreciate the precise nature of the danger or anticipate the precise result following, if he knows in a general way that he is likely to be seriously injured. p. 213.

2. A boy nine years and two months old is *held* not to have been contributorily negligent in touching a live power wire hanging from a pole, after seeing other children touch it and receive only a slight shock, he having no comprehension of the deadly quality of the current, though he did know what electricity was and that he would get a shock or be hurt if he touched the wire. p. 214.

3. Sub. (6), sec. 180.22, Stats., declaring that any one violating any of the provisions of "this section" shall be liable in treble damages, is applicable only to violations of such subsection by electric light and power companies in damaging buildings, fences, and other property, and not to violations of other subsections.   p. 217.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge.   *Affirmed.*

Action brought to recover damages sustained by a boy nine years and two months old as a result of his right hand coming in contact with a live power wire which had been cut off and left hanging down in the street near the ground. The jury by a special verdict found (1) that plaintiff did not intentionally take hold of the wire; (2) that the defendant company failed to exercise ordinary care in the method of cutting the wire and securing it to the wooden poles above the tops of the riser pipes; (3) that such failure was the proximate cause of the injury to plaintiff; (4) that defendant failed to exercise ordinary care in not discovering and remedying the condition of said wire before plaintiff was injured; (5) that such failure to exercise ordinary care was the proximate cause of the injury to plaintiff; (6) that the wire as it hung down from the riser pipes at the time of the injury to plaintiff obstructed or incommoded the public use of the street; (7) that such situation or condition of the wire was a proximate cause of plaintiff's injury; (8) that there was no want of care on the part of plaintiff that proximately contributed to produce his injury; and (9) damages in the sum of $5,000.   Plaintiff moved that the damages assessed by the jury be trebled in accordance with the provisions of sub. (6) of sec. 180.22 of the Statutes of 1923.   Defendant moved the court to change the answer to question 1 of the special verdict from "No" to "Yes" and to order judgment for defendant, and in the alternative to change the answer to question 8 from "No" to "Yes" and order judgment for the defendant.   The trial

court denied plaintiff's motion to treble the damages and denied both of defendant's motions. It then entered judgment for plaintiff in the amount assessed by the jury. The defendant appealed from the judgment, and the plaintiff asks for a review of that part of the judgment refusing to treble the damages under the statute quoted.

For the appellant there were briefs by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *James D. Shaw*.

For the respondent there were briefs by *Olwell & Brady* and *George A. Gessner*, all of Milwaukee, and oral argument by *Mr. Gessner*.

VINJE, C. J.    On the evening of September 9, 1921, plaintiff's right hand was severely injured by coming in contact with a live electric wire hanging down from an electric pole that was located close to the curb and sidewalk of one of the public streets of Milwaukee. Extending from the ground adjacent to the pole was an iron riser pipe about eight feet high which contained live electric wires running from an underground conduit to wires on the pole. It seems that a considerable time before the boy was injured the wire had been cut and left hanging in such a manner that it extended almost to the sidewalk. Plaintiff's version of the accident is substantially this: That on that evening he, with other children numbering five or six, were playing pull-away; that the curb was one of the goals; that in running across the street he ran fast, jumped up on the curb, tried to stop himself, threw out his hands, one of which came in contact with the wire and the other with the iron riser pipe, and that in so doing his right hand was severely injured. The testimony of his playmates, numbering five and ranging in ages from thirteen to seventeen at the time of the injury, was substantially to this effect: that one of the girls in running along came in contact with the wire by her arm brushing against it and she received a shock, where-

upon one of the larger boys, of the age of seventeen, began
to experiment with the wire to see if it was really alive. He
took his cap, wrapped it around his hand, touched it lightly,
and received a shock. Another boy also made a slight con-
tact with the wire and received a shock. The larger boys
went to a back yard to secure a clothes pole for the purpose
of removing the wire so that it would not come in contact
with any one passing along the sidewalk. It was testified to
that this larger boy, before he left, cautioned those standing
around, including the plaintiff, not to touch the wire. He
went and removed the wire from the sidewalk with the use
of the pole, and then he and another boy returned to the
back yard for the purpose of replacing the clothes pole
where they found it; that while they were so doing the
plaintiff voluntarily touched the wire with his hand, holding
the other hand against or around the electric pole and riser
pipe, thus making a perfect circuit for the passage of an
electric current, and that as he did this his right hand was
severely injured. The jury found that plaintiff did not
intentionally touch the wire, and it is claimed that this find-
ing is against the clear weight of the testimony and against
all probability. We shall not discuss this phase of the case
and shall assume for the purpose of disposing of the issues
that the boy voluntarily touched the wire when he received
his injury. The evidence shows that he was nine years and
two months of age at the time he was injured. It is true
that he testified that he knew that if there was electricity in
the wire and he touched it he would be hurt. He testified
that he knew what electricity was and if there was electricity
in the wire and he touched it he would get a shock; that he
would be hurt. It is elementary that one who voluntarily
subjects himself to a danger or hazard appreciating the con-
sequences thereof is held either to have assumed the risk
or to be guilty of contributory negligence, as the case may
be. And it is not necessary in order to assume the risk or be
guilty of contributory negligence that he should fully appre-

ciate the precise nature of the danger or anticipate the precise result that actually follows. It is sufficient if he knows in a general way that he will be likely to be seriously injured if he does the act in question. Having such principle of law in mind, we nevertheless reach the conclusion that in this case it can be said as a matter of law that the plaintiff, being only nine years and two months of age at the time of the accident, did not appreciate the danger that lay in the live electric wire. Especially so when taken in connection with what had just previously happened, assuming that the testimony of his playmates correctly represents what actually took place. He had seen at least two of the boys come in light contact with the wire without any serious injury. The girl, Mildred Papke, had brushed her arm against it and had received only a slight shock. Nothing, therefore, would be more natural than for him to duplicate or try to duplicate what the other boys had done, namely, lightly touch the wire. It so happened that when he did it, if he did it in this way, that his left hand was in contact with the iron riser pipe, while his right hand came in contact with the wire, thus, as before stated, furnishing a splendid circuit for the passage of the electric current through his body, and it was no doubt owing to this position that he received such serious injuries while the others who touched the wire standing on the ground received only a comparatively light shock. We think it must be held that though he said he knew what electricity was and that if he touched the wire he would get a shock or be hurt, he had no comprehension of the deadly quality of the current with which he toyed. An electric current is a mysterious, alluring thing to grown persons as well as to children, and plaintiff exhibited only that natural curiosity which children usually display under the same or similar circumstances. He had seen the wire touched without any serious danger and he attempted to do so himself. In view of his tender years and his slight, if any, knowledge of the deadly power of electricity, we feel

constrained to hold that as a matter of law he was not guilty of contributory negligence because he did not comprehend the danger. The situation is quite different where a child of his age sees coming towards him a street car or some other large visible object. He knows and comprehends that if it reaches him and runs over him it will seriously crush if not kill him. This instinct is early developed in children, and this court has perhaps gone as far as any court in holding children of tender age guilty of contributory negligence under such circumstances. But they differ so widely in their chief characteristics from the situation here presented that we feel that they are not controlling and that a different rule should be applied to the coming in contact with a live wire. Therefore, without casting any particular discredit on the findings of the jury, we dispose of this case on the theory that the plaintiff voluntarily touched the wire as testified to by his playmates, but reach the same conclusion that the trial judge did upon the verdict.

Plaintiff gave notice that he would apply for a modification of the judgment so as to allow treble damages provided for in sub. (6), sec. 180.22, Stats. As now contained in the statutes, sub. (6) reads as follows:

"Nothing contained in this section shall authorize or empower such telegraph, telephone, electric light, heat or power transmission company or corporation, to in any manner destroy, trim or otherwise injure any shade or ornamental trees along any such lines or systems, or cause any damage to buildings, fences, crops, live stock or other property, except by the consent of the owner, and any person or corporation violating any of the provisions of this section shall be liable to the person aggrieved in three times the actual damage sustained besides costs."

Sec. 180.22 contains seven subdivisions, and it is claimed by the use of the words "violating any of the provisions of this section" is meant any violation of any provision of the whole section and not merely a violation of sub. (6). It must be admitted that this suggested construction, taking

the section as it stands in the statute, is a very persuasive and plausible one except for the fact that it would lead to a classification making telephone, telegraph, electric light, heat or power transmission companies liable for three times the amount of damage for which other persons would be liable for like or similar injuries. The constitutionality of such classification may well be doubted. But be that as it may, we are clear that, though the language warrants it, the provisions of "this section" should read the provisions of "this subsection." We come to this conclusion chiefly because of the manner in which sub. (6) was incorporated in the section. During the legislative session of 1905 Mr. Julius Beer introduced a bill known as No. 141 A. A part of this bill as originally introduced read as follows:

"Nothing contained in this act shall authorize or empower such telegraph, telephone or power transmission companies or corporations to in any manner destroy, trim or otherwise injure any shade or ornamental tree along any such line except by consent of the owner or to cause unnecessary damages to buildings, fences, crops or live stock subject to a penalty of not less than five dollars and costs nor more than one hundred dollars and costs for every such offense."

Heavy pen lines were drawn through the words "nor more than one hundred dollars and costs." An amendment to this part of the bill was offered which read as follows:

"Amend by striking out all after the word 'lines' and inserting in lieu thereof the following: 'or cause any damages to buildings, fences, crops, live stock or other property except with the consent of the owner, and any person or corporation violating any of the provisions of this section shall be liable to the person aggrieved in three times the actual damage sustained besides costs."

It is apparent from this amendment and the manner in which it was offered that the idea and intent was to substitute for the penalty of not less than five dollars and costs the provision "shall be liable to the person aggrieved in three

times the actual damage sustained besides costs." It is true that the words were for any violation of "this section," but that undoubtedly was an error on the part of the person offering the amendment, because it is clear that the intent was merely to substitute for the voluntary and wilful act provided for in sub. (6) this penalty of treble damages. It was offered as a substitute for the penalty of not less than five dollars and costs for every such offense and was clearly intended to apply only to the offenses there specified. As so limited the law becomes a rational one. It provides that there shall be no wilful voluntary acts of destruction of property without the consent of the owner, and for violation of such a provision treble damages shall be paid. As before stated, if it were construed as it might be under the technical letter of the law to apply to a violation of any of the provisions in sec. 180.22, it would lead to a law of doubtful constitutionality and be so harsh in its terms that such a construction ought not be given to it unless absolutely demanded and clearly expressed. The manner in which this amendment was inserted makes it clear to our minds that it was intended to apply only to a violation of the provisions contained in sub. (6), and we so construe it. So that as so construed such subdivision would read, "and any person or corporation violating any of the provisions of this *subsection* shall be liable to the person aggrieved in three times the actual damage besides costs," leaving violations of other provisions of the whole section to be dealt with as therein provided or as the law requires. In some of the subsections the maximum penalty is prescribed, clearly indicating that no multiple of three should be applied.

*By the Court.*—Judgment affirmed.