## SARTORI v. UNITED STATES.

### No. 4107.

United States Court of Appeals
Tenth Circuit.

Dec. 26, 1950.

Glenn C. Hanni, Salt Lake City, Utah (R. A. McBroom and Mark K. Boyle, Salt Lake City, Utah, on the brief), for appellant.

O. K. Clay, Salt Lake City, Utah (Scott M. Matheson, Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

Henry E. Sartori brought this action against the United States under the Federal Tort Claims Act, 62 Stat. 933, 63 Stat. 62, 63 Stat. 101, 28 U.S.C.A. §§ 1346, 2671 et seq., and the Montana "wrongful death" statute, Title 93, § 2810, Revised Codes of Montana 1947, Annotated, to recover for the alleged wrongful death of his wife, Evelyn Sartori.

The Sartoris worked for the United States at two Army Air Bases in Great Falls, Montana, from July, 1942, to September, 1946. They worked at one base, known as Gore Field, from July, 1942, to November, 1942. In the latter month, they were transferred to the other base, known as East Base. Henry was made foreman of the parachute shop at East Base and served in that capacity from November, 1942, to September, 1946. Evelyn was a member of a group of which Henry was foreman. Henry was a licensed parachute rigger. During the first three months of her employment, Evelyn was employed as a fabric worker. During that period she took training as a parachute rigger and became a licensed parachute rigger at the end of the three-month period. The duties of a licensed parachute rigger were to clean, repair, and pack parachutes.

The parachute shop was a room 74 feet long and 37 feet wide, with a 10-foot ceiling. There were three tables in the shop,

40 feet long and three feet wide. Employees worked at these tables. Early in 1945, Evelyn was promoted to supervisor. Thereafter, she did very little cleaning of parachutes. Evelyn and the other parachute riggers were required by the United States to use carbon tetrachloride[1] as a cleaning agent. Acting under the direction of Henry, Evelyn and the other employees poured the CTC into open containers, usually one-pound coffee cans, and cleaned by dipping a cloth into the CTC and applying it to the grease spots on the parachutes. To remove grease spots from the harness and pack, the riggers dipped a brush in the CTC in the open containers and applied it to the grease spots.

In the parachute room there were four screen vents in the ceiling. On the roof of the building, evenly spaced, there were three large metal vents, which permitted air arising from the room to pass through the ceiling vents and escape through the roof vents. All the windows and doors were kept open in the spring, summer, and fall, but were kept closed in the winter, because of the extremely low temperature.

Frequently, employees, when using CTC in the cleaning of parachutes, became nauseated and dizzy and suffered from headaches. When they went out into the open air, they recovered from the nausea, dizziness, and headaches. Evelyn was affected by the fumes of CTC and her nausea, dizziness, and headaches became progressively worse through the period that she worked in the parachute shop.

Fifty parts of CTC to 1,000,000 parts of air is the maximum allowable concentration to which a person should be exposed in a room under an eight-hour period, without ventilation. Concentrations of CTC above 1,300 to 1,600 parts per 1,000,000 parts of air are unsafe for periods of more than 30 minutes. CTC poisoning causes cirrhosis of the liver. Evelyn died November 17, 1948, of advanced portal cirrhosis of the liver caused by chronic CTC poisoning.

Henry knew that the use of CTC from open cans was forbidden. He knew when government inspectors were coming to inspect the shop and he hid the open cans so the inspectors would not see them. Only on one occasion, did an inspector discover the employees in the parachute shop using CTC from open cans. As early as March, 1943, a safety inspector at East Base told Henry that respirators should be used by employees when they were cleaning with CTC. It may be that respirators were not available for East Base until January, 1944, but in January, 1944, East Base and Gore Field were merged and thereafter respirators were available. The employees did not use respirators and Henry did not require them to use respirators, because the devices were uncomfortable and cumbersome. From and after January 1, 1944, safety cans were available in which to keep the CTC when using it as a cleaning agent. The can had a tray attachment. On the tray was a basin which would hold about one quart of fluid. The basin had a lid which could be opened and closed by a lever attachment. When closed, the lid completely prevented the CTC fumes from escaping. In the use of the safety can, an employee would open the lid, dampen his cleaning cloth or brush with CTC, and then close the lid. The safety can, when filled with CTC, weighed between 50 and 60 pounds. Henry did not require the employees to use safety cans because of their weight and instructed and required them to use open cans. Of course, if the weight was excessive, he could have only partially filled the can with CTC.

Technical orders relating to the use of CTC as a cleaning agent were issued from time to time. Each shop was required to keep them on file and each foreman was required to be thoroughly familiar with them. One or more of such orders stated, in substance, that CTC was very toxic and cautioned that inhalation of its vapors should be prevented by adequate ventilation and by the use of respirators approved for organic vapors.

---

1. Hereinafter referred to as CTC.

Henry, in his complaint, alleged that the United States was negligent in failing to provide adequate ventilation for the parachute room, in failing and refusing to provide Evelyn with a respirator or any type of gas mask, in failing and refusing to provide her with a closed container or safety can, and requiring her to use CTC from an open container, and in failing to warn her that inhalation of CTC fumes would cause serious injury or death. The United States pleaded as defenses assumed risk and contributory negligence on the part of Evelyn and contributory negligence on the part of Henry.

The trial court found that the United States was negligent in failing to provide the parachute room with adequate mechanical ventilation and in failing to provide Evelyn with respirators prior to January 1, 1944. It further found, however, that Henry and Evelyn were guilty of contributory negligence and that Evelyn assumed the risk of inhaling the CTC fumes, and entered judgment for the United States.

Henry has appealed.

■ Henry was the sole heir of Evelyn and brought this action as her beneficiary under Title 93, § 2810, supra. Contributory negligence of a beneficiary is a bar to an action for death brought by or for such beneficiary. So far as we are advised, the Montana courts have never passed on the question, but the rule as above stated is supported by the overwhelming weight of the adjudicated cases.[2]

■ It is urged that the United States was guilty of negligence in failing to warn Henry and Evelyn of the latent dangers of serious injury or death that would result from the continued inhalation of CTC fumes, and that since neither Henry nor Evelyn had knowledge of such latent danger, they were not guilty of contributory negligence. We agree that it was negligence to fail to warn Henry and Evelyn of the latent dangers of continued inhalation of CTC fumes, but we cannot agree, under the facts presented on this record, that Henry was not guilty of contributory negligence. While an appreciation of the threatened peril is an element of contributory negligence, it is not essential that the plaintiff have been able to foresee the full result of his act or omission. His failure to exercise ordinary care is not excused because the peril was greater than he anticipated.[3] Henry was advised by technical bulletins that CTC was very toxic and that inhalation of its vapors should be prevented by adequate ventilation and the use of respirators approved for organic vapors. He knew that the inhalation of the fumes caused nausea, dizziness, and headaches, and that the deleterious effects on Evelyn of inhaling fumes became progressively worse. Notwithstanding this fact, and with knowledge that the use of CTC, without the user wearing a respirator was dangerous, and that the use of CTC from open cans, rather than safety cans, was forbidden and dangerous, he continued to direct Evelyn and the other employees to use the CTC from open cans and failed to require them to use respirators after they were available. Thus, with the knowledge that CTC fumes were toxic and harmful, he failed to use the means provided for protection against the inhalation of such fumes. In so doing, we think he was guilty of contributory negligence.

■ Late in the trial, Henry undertook to raise a new issue and to introduce evidence to the effect that the respirators available were not adequate to prevent the inhalation of CTC fumes. That was not one of the grounds of negligence alleged in the complaint or stated at the pretrial conference. The court sustained an objection to the testimony. Whether such evidence should have been received, in view

2. Baker v. Dallas Hotel Co., 5 Cir., 73 F.2d 825; 25 C.J.S., Death § 46, p. 1141, note 69; 17 C.J., Death § 93, p. 1244, note 63.

3. Cloud v. Houston Lighting & Power Co., Tex.Civ.App., 199 S.W.2d 260, 261; Johnston v. New Omaha, Thomson-Houston Electric L. Co., 78 Neb. 27, 113 N.W. 526, 527, 17 L.R.A.,N.S., 435; Haselmaier v. Milwaukee Electric Ry. & L. Co., 185 Wis. 210, 201 N.W. 257, 258; Gilbert v. Burlington, C. R. & N. Ry. Co., 8 Cir., 128 F. 529, 536; Frazier v. Cities Service Oil Co., 159 Kan. 655, 157 P.2d 822, 826.

of the time it was tendered and the state of the pleadings, was a matter resting in the sound discretion of the trial court. Moreover, we think its admission would not have changed the result. Failure to use the available safety cans alone was contributory negligence, wholly apart from the failure to use respirators.

Affirmed.