**AVCO CORPORATION**

v.

**AETNA CASUALTY & SURETY COMPANY et al.**

**No. 94–298–Appeal.**

Supreme Court of Rhode Island.

June 28, 1996.

John A. Tarantino, John F. Bomster, Providence, for Plaintiff.

Robert D. Parillo, John L. Altieri, Jr., O'Melveny & Myers, New York City, for Defendant.

## OPINION

BOURCIER, Justice.

This appeal stems in part from a declaration-of-rights action filed by Avco Corporation (Avco) against some forty-one insurance carriers in which Avco sought a declaration of rights from the Superior Court declaring it to be entitled to insurance coverage regarding claims made against Avco for environmental contamination at various sites in eight different states. This appeal concerns Avco's claims made against only four of the named insurance carrier defendants and concerns only claims occurring in the Common-

wealth of Pennsylvania. The four claims were in part disposed of in the Superior Court by partial grants of summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure in favor of the four defendant insurers: Insurance Company of North America, American Motorists Insurance Company, Massachusetts Bonding Insurance Company, and Great American Insurance Company (collectively carriers). Avco alleges here on appeal that the Superior Court trial justice erred in granting the partial summary judgment motions. Avco contends that the trial justice, faced with a choice-of-law issue, in deciding the partial summary judgment motions, incorrectly elected to apply both New York and Connecticut law and not Rhode Island law. We find that the trial justice, without reference to his choice-of-law considerations, properly determined in his ruling on the motions for partial summary judgment that there were no material issues of fact to be decided and the carriers were entitled to summary judgment as a matter of law, pursuant to Rule 56(b). Final judgments were entered pursuant to Rule 54(b). For the reasons that follow, we affirm the trial justice's decision.

### Facts and Case Travel

The seedlings for this action were planted in Williamsport, Pennsylvania, where Avco has maintained an aircraft engine manufacturing plant since the 1920s. That plant site in 1984 became a concern to local environmental agencies. The Williamsport Municipal Water Authority (WMWA) discovered volatile organic compounds (VOCs) in its water supply well field, which was located approximately 3,000 feet south of the Avco plant site.[1] A comprehensive analysis of the site ground water was conducted and confirmed that there were in fact contaminants in the well field that serviced area residents as a backup water supply when the regular area water reservoir was low, primarily in the summer months. The WMWA notified

---

1. The specific sources of these contaminants were the subject of a comprehensive report and decision by the United States Environmental Protection Agency in June 1991. The agency determined that at least since the 1930s various chemicals may have been seeping into the plant site's

grounds. Further, solvents and acids used in the degreasing and the rinsing of engine parts, respectively, were believed to have leaked or spilled on the plant's floors, possibly entering the site's sewer system.

the Pennsylvania Department of Environmental Resources (PADER) of the contamination problem, and PADER, in November 1984, subsequently contacted site representatives at Avco and apprised them of the situation. Further tests were conducted by PADER in December 1984 and January 1985, which tests led the agency to conclude that Avco's plant was the source of the well field contamination. The Pennsylvania agency and representatives from Avco then scheduled and held a joint press conference on January 23, 1985, during which they revealed that Avco's Williamsport plant site was being investigated as the source of the well field contaminants. Later, on November 25, 1985, a consent order was entered into between Avco and PADER in which Avco admitted that it had "discharged or permitted the discharge of a substance from property owned or occupied by Avco into the ground waters of the Commonwealth [of Pennsylvania] resulting in pollution." Avco further agreed in the consent order to initiate measures to remedy the well field contamination and pay a $25,000 fine. Avco's consent order, however, was no panacea for its environmental besetment.

In August 1986 a Williamsport resident commenced suit against Avco, claiming that Avco was liable to her for "bodily injuries," caused by "contamination allegedly emanating from the Williamsport site." Avco was served with the suit summons on August 8, 1986. The plaintiff in her civil action sought damages in the sum of $50,000. On March 3, 1987, Avco, prior to trial, settled the action with the complaining party as well as with another area resident complainant. In the settlement, Avco authorized the WMWA to charge all water and sewage costs incurred by the plaintiff complaints to Avco for as long as the resident plaintiffs resided at the same addresses at which they lived at the time of the settlement.

The WMWA had, in the meantime, both before and during the above noted private civil action, sent letters to Avco in June 1985 and November 1986 claiming that VOCs in

ground water at Avco's plant had contaminated the water supply in the area's municipal emergency backup wells. Avco disposed of that complaint, this time by virtue of a settlement agreement dated April 8, 1987. Under the terms of that agreement, Avco agreed to pay the WMWA $1,075,000 "[i]n full and complete settlement of any and all claims possessed by WMWA against Avco."

Additionally, in January 1987 the United States Environmental Protection Agency (EPA) proposed to include Avco's Williamsport plant on its National Priorities List of the most contaminated sites in the country.[2] In July 1987 the EPA notified Avco that it was assuming the monitoring of the remedial plan for the contaminated ground water cleanup efforts previously handled by PADER. Soon thereafter Avco and the EPA entered into a consent order in June 1988 that stated, in part, Avco's acknowledgment that hazardous substances had in fact been disposed of at the Williamsport site and that certain remedial actions by Avco were prescribed as "necessary to protect the public health and welfare and the environment." The consent agreement also required Avco to reimburse the EPA on an annual basis for any agency costs incurred as a result of overseeing Avco's remedial efforts.

During the period of time when Avco was actively negotiating, consenting, and settling claims with the various parties that made claims against Avco based upon the corporation's release of contaminants into the ground water, Avco never communicated with the various insurance companies from which it had purchased insurance, including the four carriers involved here in this appeal. The record in this case reveals that Avco never notified the carriers of the various claims made against it until August 1987, when Avco filed suit *against* the carriers in the Providence County Superior Court, seeking a declaration-of-rights judgment decreeing that Avco was entitled to insurance coverage from the carriers for the environmental contamination claims asserted

---

2. Counsel for Avco later stated during a March 9, 1994 hearing on the partial summary judgment motion that the EPA had in fact placed Avco's Williamsport site on the National Priorities List, which he said was "basically the EPA's way of saying we think this is a big bad problem, not just a little bad problem."

against it in connection with its Williamsport plant.[3] In that action all three claims for which Avco contends it is entitled to insurance coverage concern its Williamsport plant site. In its declaration-of-rights action, Avco contended therein that it was insured under the carriers' policies for the expenditures that it had made in connection with (1) reimbursing the WMWA for the authority's remediation costs regarding the contaminated Williamsport ground water area, (2) the private claims of neighboring landowners who alleged that hazardous waste from the Williamsport plant contaminated their private wells, and (3) the EPA claim regarding the cleanup of the Williamsport site. Avco, in its amended complaint also sought to be reimbursed for counsel fees expended in resolving the above-noted claims, apparently pursuant to G.L.1956 § 9–1–45.

On October 29, 1992, Massachusetts Bonding Insurance Company, Insurance Company of North America, and American Motorists Insurance Company, three of the defendant carriers filed a joint motion for partial summary judgment pursuant to Rule 56.[4] In their motion, the carriers asserted that Avco was not entitled to any insurance coverage from them regarding the Williamsport site under their policies of insurance issued to Avco, because Avco had failed to give the carriers timely notice of the various claims for which it was now seeking indemnification. The carriers alleged that Avco's late notification was in clear violation of the notice of claim provisions contained in each of the insurance policies they had issued to Avco. The carriers further asserted in their partial summary judgment motions that there was no dispute in regard to any issues of material fact regarding the circumstances surrounding Avco's late notice, and that as a matter of law, based upon the policy terms and notice

of claim provisions contained in the applicable policies of insurance, Avco was not entitled to recover against the carriers.

The Superior Court trial justice, to whom the summary judgment motions were assigned, afforded Avco generous latitude. He actually continued the initial hearing on the partial summary judgment motions in order to permit Avco time to conduct discovery pursuant to Rule 56(f) and to determine if it could discover facts justifying its opposition to the motions.[5] Hearings concerning the substantive merits of the partial summary judgment motions were held on January 31, 1994, and on March 9, 1994. The record of the January 31, 1994 hearing reveals that the trial justice was inclined then to grant the carriers' partial summary judgment motions, but that he opted to defer any final ruling until the March 9, 1994 hearing in order to allow Avco further opportunity to furnish affidavits in response to the carriers' pending motions. We believe that the trial justice in this case exhibited exemplary patience and extended sufficient warning of future happenings when, in deferring his final ruling at the January 1994 hearing, he advised Avco's counsel that "you haven't really indicated why this was a reasonable time notice and * * * it's the obligation of the non-moving party to present some counter-affidavit in some fashion."

At the March 9, 1994 hearing, despite the trial justice's earlier January admonition, Avco failed to present any affidavits contesting or rebutting the carriers' allegations that they had not received any notice of the various Williamsport site claims brought against Avco until August 1987—two and one-half years after the corporation had first been informed by the WMWA and PADER of the

---

**3.** Avco had relocated its principal place of business to Providence, Rhode Island, in 1985.

**4.** The defendant carrier Great American Insurance Company did not file its motion for partial summary judgment until January 13, 1994. This motion was later granted by the trial justice on June 6, 1994, pursuant to a stipulated order that was agreed to by the parties since Great American's motion contemplated the same legal and factual issues raised in the previously decided partial summary judgment motion.

**5.** Rule 56(f) of the Superior Court Rules of Civil Procedure provides that when a party opposing a motion for summary judgment cannot present affidavits with facts essential to justify opposition, the trial court "may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

environmental problems occurring at its Williamsport site. Accordingly, on the late-notice of claim issue, the trial justice found that despite his allowing Avco "extensive discovery to see if there was some other facet or other way that each of the companies [carriers] may have known about this matter, * * * apparently, that was unfruitful," and that in reference to the Williamsport site claims, Avco's late notice was "detrimental and prejudicial to the insurance carriers." In light of Avco's failure to respond to the carriers' motions with any affidavits or evidence indicating the existence of any genuine issue of fact concerning Avco's late claim notice, the trial justice then granted the carriers' motions for partial summary judgmental. He ruled as a matter of law that the carriers had in fact been prejudiced by Avco's late claim notification concerning its Williamsport site contamination problems. The order and final judgment pursuant to Rule 54(b) relating solely to the claims made against Avco with respect to the Williamsport matters was entered on May 9, 1994.

### Summary Judgment Standards

As an initial matter, this Court acknowledges that summary judgment "is a harsh remedy and must be applied cautiously." *Mallette v. Children's Friend and Service*, 661 A.2d 67, 69 (R.I.1995). *See also McPhillips v. Zayre Corp.*, 582 A.2d 747, 749 (R.I.1990). In passing upon a summary judgment motion, "it is the province of the trial justice to determine, by an examination of the pleadings, depositions, answers to interrogatories, admissions on file, and the affidavits of the parties, whether these documents present a genuine issue of material fact, 'and, if not, whether the moving party is entitled to judgment under the applicable law.'" *Volino v. General Dynamics*, 539 A.2d 531, 532–33 (R.I.1988) (quoting *Ludwig v. Kowal*, 419 A.2d 297, 301 (R.I.1980)). The trial justice views the evidence in a light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in support of the nonmoving party's claim but without resolving the facts. *Holliston Mills, Inc. v. Citizens Trust Co.*, 604 A.2d 331, 334 (R.I.1992).

However, the party opposing the granting of a summary judgment motion "cannot rely solely on mere allegations or on the denials contained in the pleadings to defeat the motion." *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.*, 640 A.2d 950, 954 (R.I.1994). "Rather, the nonmoving party must affirmatively assert facts that raise a genuine issue to be resolved." *Id.*; *see also* Rule 56(e). A party opposing a motion for summary judgment must show to the satisfaction of the court that there is a substantial material factual issue in dispute and must state in definite terms the basis of the defense, as well as evidential facts, and may not simply rely upon asserted conclusions. *See General Accident Insurance Company of America v. Cuddy*, 658 A.2d 13, 17 (R.I. 1995).

This court, when reviewing a trial justice's ruling on a summary judgment motion, will apply the same standards as those employed by the trial justice. *Hydro–Manufacturing, Inc.*, 640 A.2d at 954; *Holliston Mills, Inc.* 604 A.2d at 334; *McPhillips*, 582 A.2d at 749.

In the present case, the trial justice was unable to find that Avco had raised any genuine issue of contested material fact concerning its late notice to the carriers regarding the Williamsport environmental claims. Accordingly, he ruled as a matter of law that the carriers were entitled to the grant of their motions for partial summary judgment, pursuant to the clearly expressed language in the insurance policies issued to Avco, all of which contained similar claim notification clauses. One of those claim notification clauses contained in the policy issued by Insurance Company of North America and similar to that contained in the three other policies, included the following language regarding Avco's obligation to notify the insurer:

> "Upon the happening of an occurrence, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents *as soon as practicable.* Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place, and circum-

stances of the occurrence, the names and addresses of the injured and any available witnesses." (Emphasis added.)

This Court has stated that notification clauses such as contained in the four carrier policies concerned in this appeal require notice of claims made "as soon as practicable" in order to facilitate the timely investigation of claims by bringing an event to the attention of the insurer allowing inquiry "before the scent of factual investigation grows cold." *Textron, Inc. v. Liberty Mutual Insurance Co.*, 639 A.2d 1358, 1364 (R.I.1994). The term "occurrence" is defined in the Insurance Company of North America policy (with the other carriers' policies containing equivalent language) as:

> "[E]ither an accident happening during the policy period or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to or destruction of property during the policy period. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence." [6]

■ Certainly the dissemination of contaminants from Avco's Williamsport plant site into area ground water resulting in the contamination of the Williamsport municipal water supply and in the various claims made against Avco as a result thereof must be classified as *an* occurrence, and more specifically as one occurrence. The contaminants that were released or that seeped into the ground for an undetermined number of years assuredly may be characterized under the applicable policy language as representing a "continuous" or "repeated" exposure to conditions that caused injury to property. Accordingly, under the terms of the notice provisions contained in the insurance policies here in question, Avco was required to notify the carriers when the occurrence was first discovered or manifested itself. The record clearly reveals that by January 1985, it was fully aware of the claim that its Williamsport facility had contaminated the Williamsport

municipal water well fields, and yet it failed to notify the carriers until August 1987, some two and one-half years thereafter. The trial justice, properly noting that notice-time gap, was clearly justified in granting partial summary judgment to the four carriers. Avco had not produced any relevant material factual evidence in objecting to the carriers' motions that revealed any genuine issue of fact to be resolved at trial. Failure to set forth such facts will result in summary judgment being entered against the party opposing the motion. *Russian v. Life–Cap Tire Services*, 608 A.2d 1145, 1147 (R.I.1992).

The trial justice also properly took into account that each of the four carriers' policies with Avco included a clearly worded clause that required that the carriers be given prompt notice of any claim or lawsuit instituted against the insured, Avco. That provision read,

> "If claim is made or suit is brought against the insured, the insured shall *immediately* forward to the company every demand, notice, summons or other process received by him or his representatives." (Emphasis added.)

We are certainly not inclined to conclude for purposes of this appeal that Avco's contractual obligation to give its insurers *immediate* notice of any "claims made" or "suits brought" is satisfied by notice thereof given some two and one-half years after a claim is made or a suit brought. We know of no judicial holding or legal authority that would equate immediate as meaning within two and one-half years thereafter.

This Court has previously addressed the issue of prejudicial late notice from the insured to the insurer in *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971). In *Pickering* we employed the so-called notice-prejudice doctrine, previously stated by the New Jersey Supreme Court in *Cooper v. Government Employees Insurance Co.*, 51 N.J. 86, 237 A.2d 870 (1968). The *Pickering* case concerned a situation wherein the insurance poli-

---

**6.** This court recently defined the term "occurrence," as it is used in a general liability insurance policy, as taking place "when property damage, which includes property loss, manifests itself or is discovered or in the exercise of reasonable diligence, is discoverable." *CPC International, Inc. v. Northbrook Excess & Surplus Insurance Co.*, 668 A.2d 647, 649 (R.I.1995).

cy in question required that the insured notify the insurer "as soon as practicable" of an "occurrence." In that case we determined that the notice requirement was satisfied if "the insured acts diligently and with all reasonable dispatch, having in mind all the circumstances and facts of a particular case." *Pickering*, 109 R.I. at 158, 282 A.2d at 592–93. We ultimately held in *Pickering*, citing the New Jersey Supreme Court's holding in *Cooper*, that it is the insurance carrier's burden to show that it was prejudiced by the insured's late notice before it can "declare a forfeiture of the bargained-for protection." *Pickering*, 109 R.I. at 160, 282 A.2d at 593.

In this case there was argument made by Avco concerning whether the notice-prejudice doctrine should be employed, thereby placing the onus upon the carriers to show first that they were prejudiced by Avco's late notice before rightfully denying coverage.[7] However, the trial justice found that Avco's failure to meet the Rule 56 mandatory requirement that it submit affirmative evidence justifying its late notice to the carriers left no genuine issues of fact and that failure to do so justified his grant of partial summary judgment in favor of the carriers. The trial justice in his ruling found prejudice resulting to the carriers as a matter of law.

■ We agree with the trial justice's finding of prejudice. Avco was undoubtedly well aware of the claims being brought against it as early as 1984 and of its obligation to *immediately* notify its insurers of claims made or suits brought. During a period of time lasting for more than two and one-half years, Avco settled the claims brought against it by the water authority and by private citizens and also entered into consent agreements with PADER and the EPA concerning the remedial actions to be taken in conjunction with the Williamsport plant site cleanup claims. It was not until August 1987 that Avco first notified the carriers of its troubles and travails. The carriers at that point in time were thus, obviously, prevented from conducting any meaningful investigation of the various claims and thus had no input whatsoever into Avco's commitments to settle claims and make monetary payouts—commitments for which Avco then demanded carrier coverage payments. The "scent of factual investigation," referred to in *Textron, Inc.*, 639 A.2d at 1364, not only had grown cold but had been totally dissipated by Avco's settlements and consent agreements. By the time Avco notified the carriers, there was nothing remaining for them to do except to assume and pay Avco's negotiated financial and expense commitments. The trial justice's finding that the carriers were prejudiced as a matter of law was justified upon the facts presented to him in this case.

Our holding in *Pickering*, requiring the insurer to show prejudice, it should be noted, was predicated upon the case statement that an insurance policy "is not a true consensual arrangement but one that is available to the premium-paying customer on a take-it-or-leave-it basis." *Pickering*, 109 R.I. at 160, 282 A.2d at 593. We were quick to add in explanation, however, just one year *after* *Pickering* was decided, that "[w]e never intended by our holding in *Pickering* to permit an insured, once he has purchased his policy, to file it away and forget it, and then defend his neglect to commence suit within the stipulated period on the ground that the insurer was not prejudiced thereby." *Donahue v. Hartford Fire Insurance Co.*, 110 R.I. 603, 605, 295 A.2d 693, 694 (1972).

Although *Donahue* is not directly on point with the facts of this case because of the different types of policies in question, we do assume that a corporation like Avco is presumed to have more sophistication[8] in man-

---

7. Avco maintained its principal place of business in New York until 1970, where it obtained some of the insurance policies, and was in Connecticut until 1984, where it obtained others. The argument at the Superior Court level concerned which of the three states' laws should apply, since the New York law concerning prejudicial late notice was most sympathetic to the carriers (presuming that late notice is prejudicial), the Connecticut law was also insurance-company friendly (placing the burden on the insured to show that the insurance company was not prejudiced by the late notice), whereas the Rhode Island law most favored the insured (placing the burden to show prejudice on the insurer).

8. The record shows that besides being in business for over fifty years as an aircraft engine manufacturer, Avco was acquired by Rhode Is-

aging its affairs than the average consumer, and thus should be able to recognize and adhere to notice provisions in its contracts of insurance that require it to contact its carriers "as soon as practicable" in the event of an "occurrence" and "immediately" when "claim is made or suit is brought." We noted in *Textron* that the rationale of the notice-prejudice rule is undercut in factual situations such as here present, in which the insured is presumed to have more business acumen than the average consumer. *Textron, Inc.*, 639 A.2d at 1366.

Finally, Avco also presents here on appeal a choice-of-law contention. It alleges that the trial justice erred in not applying Rhode Island law with regard to the showing of actual prejudice on the part of the carriers. Avco, in advancing that contention, overlooks, however, the fact that the trial justice, in finding prejudice to have resulted from Avco's two and one-half year silence, determined that his finding would have been the same regardless of whether he opted for application of the New York, the Connecticut, or the Rhode Island law. Avco's choice-of-law contention is therefore accordingly feckless. Avco, paraphrasing the words of Shelley, looks before and after and pines for what is not.[9]

For the above-stated reasons we conclude that the trial justice did not err in finding that Avco had failed to reasonably comply with the claim notification provisions in its policies of insurance with Insurance Company of North America, American Motorists Insurance Company, Massachusetts Bonding Insurance Company, and Great American Insurance Company, and that the four insurers were prejudiced as a matter of law by Avco's late notice. Accordingly, we deny Avco's appeal and the partial summary judgments appealed from are affirmed. The papers in this case are remanded to the Superior Court.

FLANDERS, J., did not participate.

land-based Textron, Inc., in 1985, as a wholly owned subsidiary.

9. Percy Bysshe Shelley, "Ode to a Skylark."