**TRUK–AWAY OF RHODE ISLAND, INC., et al.**

v.

**The AETNA CASUALTY & SURETY COMPANY, et al.**

No. 97–275–Appeal.

Supreme Court of Rhode Island.

Jan. 26, 1999.

---

Paul Zevnik, Washington, DC, Richard G. Galli, John P. Gyorgy, Providence, John Osborne, for plaintiffs.

Allen B. Taylor, Mark C. Hadden, Providence, Esther R. Aronson, Hartford, CT, Dominic Shelzi, East Greenwich, Mark Lavoie, Robert Hacking, Boston, MA, Jerome J. Sweeney; Gregory Deschenes, Dennis Duggan, Boston, MA; Thomas C. Angelone, Providence, Gregory Capps, Michael Gallagher, Kathryn Dux, Dselaine Belver, Philadelphia, PA, for defendants.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This environmental insurance coverage case comes before this Supreme Court on appeal by the plaintiffs, Truk–Away of Rhode Island, Inc. (Truk–Away), and Landfill & Resource Recovery, Inc. (L & RR). The plaintiffs had sought a declaration by the Superior Court that the defendants owed a duty to defend and indemnify them under various primary and excess general liability policies. In addition, the plaintiffs had asserted claims for breach of contract; for bad faith against some of the defendants; and for denial of coverage on claims made against the plaintiffs, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601–9621 (CERCLA), for their storage and transportation of hazardous waste to a landfill site in North Smithfield, Rhode Island (the "site" or landfill). The trial justice granted partial summary judgment to five of the twelve defendant insurers.[1]

On appeal, the plaintiffs allege that the trial justice erred in granting summary judgment. They contend that (1) there existed genuine issues of material fact concerning the time when the underlying property damage and other injury actually occurred; (2) the trial justice applied the incorrect "trigger

of coverage" for determining the defense and indemnity obligations of a general liability insurer where there was continuous or progressive property damage or injury; and, (3) the trial justice failed to make findings of fact and conclusions of law to support his conclusion that there is no intent expressed in the policies to provide personal injury coverage to the plaintiffs.

The plaintiffs request this Court to reverse the five grants of summary judgment and remand the cause for trial. For the reasons hereinafter given, we deny the plaintiffs' appeal and we affirm the final judgments of the Superior Court. The facts insofar as relevant to the issues raised in this appeal are related below.

### Facts and Procedural History

The site in question is a twenty-eight acre sanitary landfill contained within a thirty-six acre parcel located in the Town of North Smithfield. From 1969 to 1974, the site was owned by Landfill, Inc. In 1974, L & RR purchased the site. Truk–Away, incorporated in 1974, is the successor to a number of corporations engaged in the business of legally transporting household, commercial, and industrial materials (solid waste) to the site since 1969. In 1979, Truk–Away purchased a controlling interest in L & RR and later, in 1987, purchased the remaining interest.

In 1977, changes made in Federal and State law redefined as hazardous waste, certain solid wastes which previously had not been so defined. These solid wastes had been placed at the site in question. In March 1978, the Rhode Island Department of Environmental Management (DEM) began requiring that L & RR manifest all hazardous industrial wastes being placed at the site. On September 6, 1979, DEM ordered L & RR to cease accepting hazardous waste at the site. On October 30, 1981, DEM issued a "decision and order" directing L & RR to cease accepting all wastes and to close the northern portion of the landfill. L & RR

---

1. The defendants in the instant appeal are: Aetna Casualty & Surety Company, Commercial Union Insurance Company, Hartford Accident and Indemnity Company, Fremont Indemnity Company, and the Stonewall Insurance Company.

filed its appeal from the closure order in the Superior Court. On December 28, 1981, a justice of that Court stayed enforcement of the DEM order. Subsequent proceedings in the Superior Court appeal culminated in a consent order and agreement between the parties, dated June 29, 1983 (the "consent order"), which provided for the disposal of waste at the site up to and including 1985, and for the subsequent closure of the site.

Meanwhile, the Environmental Protection Agency (EPA) had commenced a preliminary site assessment and in December 1982, placed the site on the initial Superfund National Priorities List.[2] Following that, the EPA conducted a Remedial Investigation/Feasibility Study and assumed jurisdiction over remediation of the site. In 1986, the EPA notified the plaintiffs of their potential responsibility at the site. In 1988, other potentially responsible parties[3] were also notified. On September 29, 1988, after providing opportunity for public comment, the Regional Administrator of EPA Region I issued a final record of decision, which specified the remedial actions necessary to be undertaken at the site to protect the public health, welfare, and the environment.

On June 29, 1990, EPA Region I issued an administrative order (the "EPA order"). In its findings, the EPA reported that "[i]n 1969, the Landfill and adjacent areas were purchased by Landfill, Inc. and began operation as a solid waste disposal area," and that subsequently, "[t]he Landfill and adjacent areas were sold to Landfill and Resource Recovery, Inc. (L & RR, Inc.) in 1974 ***." The EPA then asserted that "L & RR, Inc. has owned the Landfill at all times since 1974, including the period between March 1977 and September 1979 when Hazardous Substances were disposed of at the Landfill." After acknowledging that industrial waste manifests had been submitted by L & RR to the DEM, the EPA found that "in addition to the RIDEM manifests submitted to the EPA, EPA has estimated that more than two (2) million gallons of waste which included Hazardous Substances was accepted for disposal at the Landfill between March 1977 and September 1979." The EPA further noted in its order that "[t]he precise location of the Hazardous Substances in the Landfill is unknown."

The EPA order additionally noted that the landfill presently releases and will continue to release hazardous substances into the environment, including the air, groundwater, and surface water, and asserted that: "[a] significant threat exists that a groundwater plume may flow from the source area into the future. This threat is caused by the existence and unknown location of over 2 million gallons of a wide variety of wastes, including Hazardous Substances in the Landfill ***."

To remedy existing damage and prevent the occurrence of future damage, the EPA order required the plaintiffs and approximately twenty other parties to commence specific remedial actions at the site. The plaintiffs' response was the commencement of the civil action now in part before us, against the defendants claiming damage under various primary and excess general liability insurance policies. The particular defendants' insurance policies with which we are concerned in the instant appeal had all by their express terms expired by 1974.

In response to the plaintiffs' allegations, the defendants in the present appeal filed motions for partial summary judgment. The defendants in those Superior Court motions asserted that because the particular insurance policies at issue all had expired by 1974, and because the plaintiffs had produced no evidence showing that property damage triggering coverage had taken place prior to 1977, the defendants had no duty under the policies to indemnify the plaintiffs. Simply stated, the defendants contended that there was no liability triggering occurrence during the terms of the policies in question. In addition, the defendants asserted that they had no present duty to defend the plaintiffs because the EPA order did not contain any allegations of loss that occurred during the

---

2. The EPA was not a party to the consent order or the DEM proceedings.

3. Potentially responsible parties are parties who had either generated hazardous wastes that were shipped to the site or transported hazardous wastes to the site.

effective periods of their now-expired policies. The defendants further maintained that the alleged potential claims for nuisance and trespass would not obligate them to the plaintiffs because the policies in question did not include a coverage for those claims and were not encompassed in the enumerated personal injury offenses section of the policies. Accordingly, the defendants asserted that there was no breach of good faith on their part that was owed to the plaintiffs.[4] At the time of those motions, no private actions had been filed against the plaintiffs, and there is nothing before us indicating that any have since been filed.

The trial justice, after hearing, granted the defendants' motions, finding that there was no policy triggering occurrence that took place during the policy term of any policy issued by the defendant insurers in this appeal prior to 1977. He dismissed the personal injury claims with prejudice, finding that a careful reading of the policies revealed that there was no evidence of any contractual intent contained in the policies to cover such claims.[5] Additionally, the trial justice precluded argument on the bad faith claim stating: "[y]ou've got to establish liability first; then worry about bad faith afterwards." The plaintiffs filed the instant appeal.

Additional facts will be supplied as needed.

### Analysis

■ On appeal, the plaintiffs assert through affidavits and deposition testimony, that there did exist genuine issues of material fact as to whether any property damage and other injury occurred prior to 1977, and that the failure by the EPA to specify the exact date on which hazardous substances were first disposed at the site is not controlling if the damage was discoverable prior to 1977. Essentially, they maintain that there was a continuous disposal of "hazardous"

waste at the site since 1969 and, although they legally dumped the same type of waste from 1969 until 1985, the EPA has latched onto this date for purposes of its own action because solid waste was redefined as hazardous waste commencing in 1977.

Additionally, the plaintiffs contend that the trial justice applied an incorrect "trigger of coverage" theory and rule for determining the contractual defense and indemnity obligations of the defendants where ongoing disposals caused a continuous or repeated exposure to conditions that could constitute an occurrence resulting in property damage or injury. The plaintiffs assert that such an occurrence was reasonably discoverable by the defendants prior to 1977 when they conducted annual site inspections and therefore, the defendants should provide coverage under the policies. The plaintiffs finally contend that the trial judge erred because he failed to make findings of fact and conclusions of law that would support his determination that there was no intent disclosed in the policies that would provide personal injury coverage to the plaintiffs.

The disputed policies, all of which expired by 1974, each contain substantially identical language providing that the insurers will pay or indemnify the insured for:

> "sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence ***."

where "occurrence" is defined as:

> "an accident, including injurious exposure to conditions, which results during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured***."

In addition:

> "For the purpose of determining the limit of the company's liability, all bodily injury

---

4. Other arguments raised by defendants, but not reached by the trial justice, were: the plaintiffs are not the named insureds under the policies; there is no coverage because the plaintiffs intentionally caused the property damage; and, to the extent that some of the policies contain pollution exclusion clauses, such clauses bar the plaintiffs' personal injury claims under those policies.

5. On April 21, 1997, the trial justice entered an order granting the defendants' motion for partial summary judgment on the personal injury coverage claims. A separate judgment was not entered on this order. However, on April 22, 1997, after entering an order on the ground that there was no occurrence, the court entered a final judgment which stated: "[j]udgment on all counts of the Plaintiff's [*sic*] complaint hereby enters in favor of defendants ***."

and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence."

Several of the policies involved here contain a standard pollution exclusion clause. All appear, however, to provide for personal injury liability coverage for certain enumerated offenses, including: (1) "false arrest, detention or imprisonment, or malicious prosecution"; (2) "libel, slander, defamation, disparagement, or violation of an individual's right of privacy"; and (3) "wrongful entry or eviction, or other invasion of the right of private occupancy."

"In reviewing the grant of a summary judgment motion, this Court employs the same standard on review as the trial justice. We must examine all of the pleadings, memoranda and affidavits in the 'light most favorable to the party opposing the motion.'" *Splendorio v. Bilray Demolition Co.,* 682 A.2d 461, 465 (R.I.1996) (quoting *Rustigian v. Celona,* 478 A.2d 187, 190 (R.I.1984)). *See also Boland v. Town of Tiverton,* 670 A.2d 1245, 1248 (R.I.1996).

■ In *CPC International, Inc., v. North-brook Excess & Surplus Insurance Co.,* 668 A.2d 647 (R.I.1995), we stated that "an 'occurrence' under a general liability policy takes place when property damage, which includes property loss, manifests itself or is discovered or in the exercise of reasonable diligence, is discoverable." *Id.* at 649. "[T]here can be no occurrence under the policy without property damage that becomes apparent during the policy period, and property loss and compensable damages cannot be assessed unless the property damage is discovered or manifests itself." *Id.* The dissemination of contaminants, through seepage, for an undetermined number of years constitutes a continuous or repeated exposure to conditions resulting in property damage. *See Avco Corp. v. Aetna Casualty & Surety Co.,* 679 A.2d 323, 328 (R.I.1996). However, such continuous activity constitutes only one occurrence for purposes of an insurance policy. *See id.*

The plaintiffs assert that *CPC International, Inc.,* should be construed to require application of a "continuous injury" or similar trigger of coverage where there are allegations made of continuous or progressively deteriorating property damage and personal injury. The plaintiffs contend that whether the damage to the dumping site was discoverable prior to 1977 is a question of material fact which should be left to the jury.

We disagree. A careful review of the pleadings, memoranda, and affidavits reveals to us, as it apparently did for the trial justice, that the plaintiffs merely discuss the existence of general solid waste disposal at the site between 1969 and 1985. At the summary judgment hearing, the trial justice repeatedly asked the plaintiffs if they were able to show any evidence of actual property damage at the site occurring prior to 1977. They failed to do so. Conversely, the EPA order specifically alleges and differentiates that while L & RR, Inc., owned the landfill at all times since 1974, it was during the period between March 1977 and September 1979 when the more than two million gallons of waste, including hazardous substances, was accepted for disposal. It was those wastes that formed the basis for its June 29, 1990 order. The EPA order further found that it was the existence and the unknown location of that two million plus gallons of waste that posed the significant continuing threat to the public health, safety, and environment, and required immediate remedial measures

It is clear that the EPA order was concerned exclusively with the existence of the specific two million plus gallons of concealed waste. The fact that the plaintiffs may have been disposing of what they suggest was essentially the same type of waste on a continuous basis since 1969 is not sufficient evidence to show that such placements resulted in an occurrence triggering liability for purposes of the policies at issue. Indeed, even if the defendants, through the exercise of reasonable diligence, could have discovered that the plaintiffs were disposing of that waste prior to 1977, such a fact alone does not amount to evidence of property damage amounting to an occurrence during the relevant policy periods.

We agree with the trial justice that there is no evidence present in the record to show

the existence of an occurrence that could have served effectively to trigger liability under any of the five policies concerned in this appeal prior to 1977. The trial justice for that reason did not err in granting the defendants' motion for partial summary judgment. Having so concluded, we find it unnecessary to address whether the general liability provisions in the policies in question provide coverage for claims of nuisance and trespass under the "personal injury" sections of the policies.

Accordingly, for all the foregoing reasons, the plaintiffs' appeal is denied and dismissed. The final judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.