**TRAVELERS CASUALTY AND SURETY COMPANY, INC.,** Plaintiff,

v.

**PROVIDENCE WASHINGTON INSURANCE COMPANY, INC., Defendant.**

No. C.A. 10–147 S.

United States District Court, D. Rhode Island.

Aug. 16, 2011.

Jason C. Preciphs, R. Kelly Sheridan, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, RI, John A. Nadas, Robert A. Kole, Choate, Hall & Stewart LLP, Boston, MA, for Plaintiff.

Todd D. White, Katy A. Hynes, Adler, Pollock & Sheehan, PC, Providence, RI, for Defendant.

---

1. *Emhart Indus., Inc. v. New England Container Co.,* No. 06–218–S (D.R.I.); *Emhart*

## OPINION AND ORDER

WILLIAM E. SMITH, District Judge.

This case calls upon this Court, once again, to elucidate an insurer's duty to defend under Rhode Island law. The matter is before the Court on the parties' cross-motions for summary judgment. For the reasons explained below, Plaintiff's motion is denied and Defendant's motion is granted.

### I. Introduction

Plaintiff Travelers Casualty and Surety Company, Inc. ("Travelers") and Defendant Providence Washington Insurance Company, Inc. ("PWIC") were both insurers of New England Container Company ("NECC"). Emhart Industries, Inc. ("Emhart") filed two suits against NECC,[1] alleging that NECC is liable for damages resulting from its operation of a facility for reconditioning steel drums on the Centredale Manor Superfund Site. NECC tendered the Emhart suits to Travelers and PWIC for defense. Travelers agreed to contribute to NECC's defense pursuant to a reservation of rights, and has subsequently incurred substantial costs defending NECC. PWIC refused to contribute to defending the Emhart actions or reimburse Travelers for any of the defense costs it has incurred. Travelers has brought this action to compel PWIC to contribute to NECC's defense in the Emhart action. PWIC contends that it has no duty to defend NECC.

The parties' cross-motions for summary judgment place three main issues in dispute: (1) whether Travelers should be permitted to defend NECC pursuant to a reservation of rights and then pursue contribution from PWIC; (2) whether the charging documents in the Emhart action

*Indus. v. New England Container Co.,* No. 06–6095 (R.I.Super.Ct.).

trigger PWIC's duty to defend; and (3) whether the "pollution exclusion" in the PWIC insurance policy absolves PWIC from a duty to defend NECC in the Emhart action. The Court will address them in turn.

## II. Analysis

### A. Seeking Contribution After a Reservation of Rights

■ PWIC contends that because Travelers is defending NECC subject to a reservation of rights, it

> has done nothing more than advance the costs of defense to NECC, unless and until such time as Travelers elects to cease defending NECC, or unless and until such time as a court determines that Travelers owes NECC no duty to defend. In the event that a determination is made that Travelers owes NECC no duty to defend, Travelers may seek to and obtain a refund of the defense costs it advanced under its reservation of rights. Therefore, Travelers has suffered no damages at this time, and any claim for contribution against PWIC is not ripe at this time.

(PWIC's Mem. in Supp. of Summ. J. 9–10, ECF No. 15.)

This argument amounts to a categorical rule that an insurer may not defend an insured pursuant to a reservation of rights and then seek contribution from another insurer but must either defend the insured unconditionally or forego all rights to contribution from other insurers. PWIC did

not cite any authorities in its submissions to support this argument, but it did point to *GRE Ins. Grp. v. Metro. Boston Hous. P'ship, Inc.*, 61 F.3d 79 (1st Cir.1995), at oral argument. There is only one sentence in that decision that even remotely touches on the issue here, and it is this: "As the *Camp Dresser* court indicated, an insurer in this position may 'undertake the defense of the underlying action with a reservation of rights with respect to the excludable claims' or it may share respective defense responsibilities with co-counsel. 30 Mass.App.Ct. at 323 n. 4, 568 N.E.2d at 634 n. 4." *GRE Ins.*, 61 F.3d at 85. This does not support PWIC's proposed rule. It simply says, following the cited footnote in *Camp Dresser*, that an insurer faced with a lawsuit, some of whose claims it has a duty to defend and some of whose claims it arguably may not, may defend pursuant to a reservation of rights or may share defense responsibilities with another insurer. It nowhere states that, if an insurer defends pursuant to a reservation of rights, it may not later turn around and seek contribution from other insurers.[2] PWIC has pointed to no authority, and the Court has found none, that makes a distinction for the purposes of seeking contribution between insurers who unconditionally defend the insured and insurers who do so subject to a reservation or rights.

PWIC's proposed rule is not only unsupported in the law, it would also create perverse incentives. It would incentivize

2. Nor does the "or" in the quoted sentence separate two mutually exclusive alternatives; rather, as the citation to *Camp Dresser* makes clear, it seems to operate as an "and/or." *See Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 30 Mass.App.Ct. 318, 568 N.E.2d 631, 634 n. 4 (1991) ("Home could have undertaken the defense of the underlying action with a reservation of rights with respect to the excludable claims. It also could have resolved respective defense responsibilities by agreement with Imperial."). The Court sees no reason why an insurer may not simultaneously defend pursuant to a reservation of rights and share defense responsibilities with another insurer. In any event, even if the "or" were interpreted the wrong way, the way PWIC wants it to be interpreted, the sentence would still not help PWIC, as explained above.

10

insurers to refrain from defending their insured when in doubt as to whether a duty to defend exists and to wait it out and hide behind other insurers. In short, the fact that Travelers agreed to defend NECC subject to a reservation of rights does not eviscerate its right to seek contribution from PWIC.

### B. Triggering The Duty To Defend

■ The Emhart complaint alleges that PWIC insured NECC from 1982 to 1985 and that NECC operated a facility for reconditioning steel drums on the Centredale Manor Superfund Site "[f]rom approximately 1952 until the early 1970s." (Emhart Complaint[3] ¶¶ 10, 25 (Ex. 4 to Travelers' Mot. for Sum. J., ECF No. 13).)[4] Picking up on these allegations, PWIC argues that it cannot be held to a duty to defend NECC when its policy period did not correspond to the period during which the alleged environmental damages occurred.

■ Under Rhode Island law, property damage triggers insurance coverage at the time when the damage (1) manifests itself, (2) is discovered, or (3) in the exercise of reasonable diligence is discoverable. *Textron, Inc. v. Aetna Cas. & Sur. Co.*, 754 A.2d 742, 746 (R.I.2000) (hereinafter "*Textron–Wheatfield*"); *CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 668 A.2d 647, 649, 650 (R.I.1995). In this case, there is no question that the damages were not manifested or discovered during the period between 1982 and 1985. The only question is whether they were reasonably discoverable during that time.

■ Discoverability is a three-pronged inquiry: " 'discoverable in the underlying exercise of reasonable diligence' mean[s] that (1) the property damage occurred during the policy period, (2) the property damage was capable of being detected, and (3) the insured had reason to test for the property damage." *Textron–Wheatfield*, 754 A.2d at 745 (internal citations omitted). The trigger test is not to be confused with the discoverability test. The policy is triggered when *either one* of three conditions—one of which is discoverability—is satisfied. Discoverability itself is satisfied only if *all* of the three distinct conditions are met. The first of these conditions is that the property damage must have occurred during the policy period. It is important to keep in mind, as both parties often fail to in their briefs, that this requirement, i.e., number (1) of the discoverability elements, is distinct from numbers (1)-(2) of the trigger conditions and from numbers (2)-(3) of the discoverability elements.

Under the pleadings test, to establish that PWIC has a duty to defend NECC in the Emhart action, Travelers must show that the Emhart complaint establishes the possibility that (1) the damage occurred between 1982 and 1985, (2) the damage was capable of being detected at some point between 1982 and 1985, *and* (3) NECC had reason to test for the property damage between 1982 and 1985.

The second and third elements of this test are probably met here, because the Emhart complaint leaves open the possibility that PWIC had reason to test for the

---

**3.** The parties do not dispute that the state court complaint is "virtually identical" to the federal court complaint. (Travelers' Statement of Undisputed Facts ¶ 2, ECF No. 14 (undisputed by PWIC).) Therefore, it is sufficient to go by the allegations of the federal complaint.

**4.** By contrast, Travelers insured NECC between 1969 and 1982. (Emhart Complaint ¶ 9.)

property damage and that it was capable of being detected during the relevant period. *See Emhart Indus., Inc. v. Home Ins. Co.,* 515 F.Supp.2d 228, 238 (D.R.I.2007), *aff'd, Emhart Indus., Inc. v. Century Indem. Co.,* 559 F.3d 57 (1st Cir.2009) ("Of course, as Century points out, the charging documents are silent with respect to whether dioxin was discoverable at the Site in 1969; it is, therefore, unclear from the face of the documents whether the alleged contamination was caused by an 'occurrence.' But under Rhode Island law, neutral or ambiguous allegations do not foreclose an insurer's duty to defend.... Under our rule that doubt must be resolved against the insurer.") (citations, quotation marks, and brackets omitted). Specifically, PWIC's argument that the technology for the detection of dioxin was not in place from 1982 to 1985 rings hollow in view of this Court's finding that the damage was detectable during the years 1968 to 1970, the policy period at issue in *Emhart,* 515 F.Supp.2d at 238–39.

However, even if the second and third elements of discoverability are satisfied, the difficulty in this case arises in establishing the first element—that the damage potentially "occurred" between 1982 and 1985. In *Emhart,* the applicable policy periods provided coverage for 1968 to 1970 and 1969 to 1970, and the operations took place from 1943 to 1971. 515 F.Supp.2d at 231–32. Thus, there was some overlap between the policy periods and the period of operations, when the property damage allegedly took place. Not so in this case. By 1982, the start date of PWIC's insurance policy, NECC had left the Centredale Manor Site and residential buildings had been erected there. "[T]here is no allegation anywhere in Emhart's Complaint that NECC had any connection with the property in question from 1982–1985, or that NECC continued in its barrel reclamation business at that site." (PWIC's Statement

of Undisputed Facts, ECF No. 16, ¶ 17 (not disputed by Travelers).)

Travelers responds that "Rhode Island courts consistently have found that property damage is potentially discoverable even where the insured no longer owns or conducts operations at the site in question." (Travelers' Opp'n 8, ECF No. 20; *see also* Hr'g Tr. 12, Oct. 6, 2010, ECF No. 23.) This argument misses the mark, because it conflates the second and third elements of discoverability (detectability and reason to test) with the first element (occurrence). It is true that there are Rhode Island decisions finding a duty to defend even when the insurance policy started and ended before the actual discovery of the damages. But, in all these cases, the policy period had some overlap with the period of the insured's allegedly damaging activities. Travelers has not cited a single decision, and the Court has not found one, holding that discoverability was satisfied when the policy period did not correspond at all to the period during which the insured conducted its allegedly harmful activities.

In the two recent Rhode Island cases finding a duty to defend, even though the damage was not *discovered* until after the policy period, the damage *occurred* during the policy period. *See Textron, Inc. v. Aetna Cas. & Sur. Co.,* 723 A.2d 1138, 1139, 1144 n. 10 (R.I.1999) (hereinafter *"Textron–Gastonia "*) (the policy was for 1960 to 1986 and the contaminating agent was used from 1957 to between 1973 and 1974); *Textron–Wheatfield,* 754 A.2d at 744–45 (the policies were for 1963 to 1966, 1979 to 1981, 1982 to 1984, and 1984 to 1986, and the operations were from 1960 to 1987). Here, by contrast, the PWIC policy did not commence until 1982, ten years after the end point of the occurrence of the alleged environmental damage.

Nor do the other cases relied upon by Travelers help it. *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 708 F.Supp.2d 202 (D.R.I.2010), is inapposite because it did not involve a policy period issue. Also inapposite is *CPC Int'l*, which made no findings as to whether a duty to defend (or a duty to indemnify) existed but merely established the manifestation/discovery/discoverability trigger test cited above. Travelers' favorite case, *Ins. Co. of N. Am. v. Kayser–Roth Corp.*, No. C.A. PC 92–5248, 1999 WL 813661 (R.I.Super.Ct. Jul. 29, 1999), *aff'd in relevant part*, 770 A.2d 403 (R.I.2001), is long and complicated and for the most part irrelevant to this case. In one respect, however, the decision is right on point—and it undercuts Travelers' position and confirms the Court's reasoning: "because the occurrence here took place before the policy period, Kayser–Roth has failed to prove coverage pursuant to the first sentence of the definition of occurrence notwithstanding the existence of property damage throughout the policy period." *Id.* at *35.[5]

This Court noted in *Emhart* that "the policy period is a relatively small speck on the continuum of contamination alleged by the EPA." 515 F.Supp.2d at 239. Here, there is not even a small speck of an overlap between the policy period and the period of the insured's allegedly damaging activities. In this respect, this case resembles *Truk–Away of Rhode Island, Inc. v. Aetna Cas. & Sur. Co.*, 723 A.2d 309 (R.I. 1999), where the Rhode Island Supreme Court affirmed summary judgment for the insurers on a duty to defend claim when the alleged environmental damage oc-

curred between 1977 and 1979 but the insurance policies expired in 1974. The Court can see no principled reason, in light of the Rhode Island Supreme Court's holding, to treat insurance policies that commenced after the occurrence of damages any differently from insurance policies that expired before the occurrence of damages. In both cases, the damage falls outside the policy period and the policy is not triggered.

One might argue that although the discharge first occurred sometime between 1952 and the early 1970s, the damage was a *continuing* occurrence that persisted after the termination of NECC's work on the Centredale Manor Site and through the time of the PWIC policy. *See Emhart*, 559 F.3d at 77–78 ("A continuous trigger standard charges a loss to policies in effect from the time of exposure to manifestation, and, thus, presumes injury from the time of exposure through manifestation. In contrast, an 'injury-in-fact' standard triggers coverage only when an 'injury' occurs during the policy period.") (citations and quotation marks omitted). There is a certain appeal to this logic in environmental damage cases of this sort. However, this Court rejected the "continuous trigger" theory in *Emhart* in light of the fact that the Rhode Island Supreme Court had adopted a "manifestation/discovery/discoverability trigger" instead. *Emhart*, 515 F.Supp.2d at 256, 265. Since the definition of "occurrence" in the policies in *Emhart* is identical to the definition of "occurrence" in the PWIC policy, this Court's rejection of the continuous trigger theory in *Emhart* precludes its adoption in this case. In any

---

**5.** The court went on to conclude that coverage was triggered under the second sentence of the applicable policy, a type of provision not present in this case. *Ins. Co. of N. Am. v. Kayser–Roth Corp.*, No. 92–5248, 1999 WL 813661, at *35 (R.I.Super.Ct. Jul. 29, 1999). The court also found that another policy was

triggered because that "highly unusual" policy—unlike the one at issue here and in *CPC Int'l*—did not require that the property damage occur during the policy period. *Id.* at *27. In that respect, that policy, unlike the policy at issue here, "resemble[d] a claims-made policy." *Id.*

event, both parties made clear at oral argument that neither of them was advocating a continuous trigger theory. (Hr'g Tr. at 10, 32.) Given this mutual agreement, and given the Court's ruling in *Emhart*, affirmed by the First Circuit, the Court will not adopt a continuous trigger test.

Finally, at oral argument, Travelers argued against a finding of no duty to defend based on the non-commencement of the policy period, on the grounds that such a finding would create a "donut hole" in coverage. (*See* Hr'g Tr. at 26–27.) In other words, if the damage occurs at point A in time but is not manifested or discovered until point B, a policy in existence at point A could be triggered under the discoverability trigger and a policy in existence at point B could be triggered under the manifestation or discovery triggers, but a policy that commenced after point A and expired before point B may not be triggered at all. While it is true that this is theoretically possible, it is also true that there is nothing particularly wrong with that. Merely calling something a doughnut does not make it necessarily bad, and Travelers has not articulated a reason why the Court should avoid its specter.

In short, PWIC's duty to defend NECC was not triggered because the alleged property damage occurred before the commencement of PWIC's policy.

### III. Other Issues

In disputing its duty to defend, PWIC perfunctorily raises a number of other arguments—namely, failure to sue as a subrogee, known loss, and late notice. These are arguments that appear to be thrown in for good measure, but lack the necessary citation of factual or legal support, and they are without merit.

### IV. Conclusion

For the foregoing reasons, PWIC's motion for summary judgment is GRANTED and Travelers' motion for summary judgment is DENIED.

IT IS SO ORDERED.