**AETNA CASUALTY AND SURETY COMPANY**

v.

**Barbara CURLEY et al.**

**No. 90–265 M.P.**

Supreme Court of Rhode Island.

Jan. 25, 1991.

Dennis J. McCartin, Hanson, Curran, Parks & Whitman, Providence, for plaintiff.

Christine L. McBurney, John F. McBurney, Joseph A. Capineri, Capineri & Crowley, Pawtucket, for defendants.

OPINION

FAY, Chief Justice.

The United States Court of Appeals, First Circuit, acting pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure, certified to this court three questions of law together with a statement of facts relevant to the controversy in which the questions arose. The relevant facts, as set forth within the certification order, are as follows.

On July 26, 1983, a fire at 74 Second Street in the city of Pawtucket damaged the home of defendant Barbara Curley (Curley). Curley's father, Leonard Bruse (Bruse), died the following September as a result of injuries he sustained during the fire. Bruse died intestate, and it is undisputed and agreed to by the parties that Curley is the sole heir of Bruse's estate.

An insurance policy covering Curley's Second Street home had been issued by plaintiff, Aetna Casualty and Surety Company (Aetna), previous to the July 1983 fire, and this policy was in effect at the time of the blaze. Contained within this

insurance policy was a promise by Aetna to indemnify and defend Curley against claims for damages for "bodily injury." The pertinent language of the insurance policy regarding coverage for personal liability of Curley was as follows:

> "If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:
>> a. pay up to our limit of liability for the damages for which the insured is legally liable; and
>> b. provide a defense at our expense by counsel of our choice."

The policy defined "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom."

On January 9, 1984, Lynn A. Wilson (Wilson), Curley's daughter and Bruse's granddaughter, was appointed administratrix of Bruse's estate by the Pawtucket Probate Court. Approximately three months later Wilson filed suit against Curley in Providence Superior Court on behalf of Bruse's estate, alleging that Bruse's death had been caused by Curley's negligence. Specifically Wilson alleged that on the night of the fire Curley negligently discarded a lit cigarette that eventually started the fire, and as a result of the fire, Bruse suffered injuries resulting in his death two months later. Aetna defended Curley in this action. The Superior Court suit sought "survival-type" damages, including damages for pain and suffering, pursuant to G.L. 1956 (1985 Reenactment) §§ 10–7–5 and 10–7–7, and "wrongful death" damages, pursuant to § 10–7–1.

In July 1988, before the Superior Court action had been reached for trial, Aetna, through separate counsel, brought a declaratory judgment action in the United States District Court for the District of Rhode Island naming Curley and Wilson as defendants. By means of this action, Aetna sought a declaration that it had no obligation to indemnify Curley if damages were assessed against her in the Superior Court action. In support of its position, Aetna alleged that any indemnification of Curley for her negligence in the death of her father would violate public policy because, as the sole heir of Bruse's estate, these funds would eventually be obtained by Curley herself. According to Aetna, such a result would, in effect, allow Curley to collect damages from herself and allow her to benefit financially from her own wrongdoing.

In early 1989 with the District Court declaratory judgment action still pending, the Superior Court action was reached for trial. In that action Curley was found negligent in causing the fire at her home on July 26, 1983, and her negligence in causing the fire was determined to be the proximate cause of her father's death. On the basis of this finding, the jury awarded $50,000 in wrongful death damages and $200,000 in survival damages. Aetna, on behalf of Curley, appealed this verdict and jury award, and the matter is currently pending before this court.

Subsequently the District Court ruled on Aetna's declaratory judgment action in two decisions, one addressing the wrongful death action, and the other addressing the survival action. In these rulings, the District Court declared that Aetna had no obligation to indemnify Curley for any damages assessed against her in the Superior Court action. Wilson, the administratrix, appealed this ruling to the United States Court of Appeals for the First Circuit. Thereafter the Court of Appeals certified the following three questions of law to this court:

> "1. Can the personal representative of a decedent recover wrongful death damages under R.I. Gen. Laws § 10–7–1 which will go directly to the decedent's only surviving child in circumstances where the child's negligence was the sole proximate cause of the decedent's death?
> "2. Can the personal representative of a decedent recover survival-type damages under R.I. Gen. Laws §§ 10–7–5, 10–7–7, from the tortfeasor whose negligence was the sole proximate cause of the decedent's death in circumstances where the tortfeasor is also the sole, or a principal, beneficiary of the decedent's estate?

"3. If the answer to the immediately preceding question is in the affirmative, must the damages be proportionately reduced (or otherwise limited) to eliminate that portion of the recovery which would otherwise be payable to the tortfeasor/beneficiary upon distribution of the estate?"

## I

CAN THE PERSONAL REPRESENTATIVE OF A DECEDENT RECOVER WRONGFUL DEATH DAMAGES PURSUANT TO G.L.1956 (1985 Reenactment) § 10–7–1 WHICH WILL GO DIRECTLY TO THE DECEDENT'S ONLY SURVIVING CHILD WHEN THE CHILD'S NEGLIGENCE WAS THE SOLE PROXIMATE CAUSE OF THE DECEDENT'S DEATH?

This first certified question presents an issue of first impression in this jurisdiction. For the reasons stated herein, we answer this question in the negative.

When first enacted in 1853, Rhode Island's Wrongful Death Act, modeled after Lord Campbell's Act, was intended to compensate the families of persons wrongfully killed. *See Hall v. Knudsen,* 535 A.2d 772, 774 (R.I.1988); *Presley v. Newport Hospital,* 117 R.I. 177, 194, 365 A.2d 748, 757 (1976) (Kelleher, J., dissenting). Prior to its passage, a decedent's family had no avenue of recovery for the decedent's wrongful death. *Id.*

The current version of § 10–7–1 states as follows:

"Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."

Damages recovered under § 10–7–1 are disbursed pursuant to §§ 10–7–10 and 10–7–2. Section 10–7–10 provides that

"[a]11 damages recoverable under §§ 10–7–1 to 10–7–4 inclusive shall be recoverable by and awarded to those beneficiaries as specified in § 10–7–2 and shall not be deemed or considered damages to the estate of the decedent, nor shall they be considered in any way an asset of the estate of the decedent, nor liable to any claims against the estate of the decedent."

Section 10–7–2 states in part:

"[T]he amount recovered in every such action shall one-half (½) thereof go to the husband or widow, and one-half (½) thereof to the children of the deceased, and if there be no children, the whole shall go to the husband or widow, and, if there be no husband or widow, to the next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate."

In the instant case Bruse died leaving no widow surviving and leaving Curley as his sole surviving child. Pursuant to the intestacy laws of this jurisdiction, Curley, as the sole surviving child, represents the only statutory beneficiary capable of receiving the $50,000 wrongful death jury award.

Although this is a case of first impression in this jurisdiction, we find guidance in legislation enacted in this state and similar cases decided by this court. In *Morin v. Aetna Casualty and Surety Co.,* 478 A.2d 964 (R.I.1984), the plaintiffs brought a civil action against the defendants, seeking to recover insurance proceeds for damages to their home resulting from a fire. Prior to the filing of the civil suit, the plaintiffs were indicted on charges of having intentionally set the fire and were eventually convicted. *Id.* at 965. Relying on this criminal conviction, the defendant averred it had no obligation to pay the insurance proceeds to the plaintiffs, who themselves had intentionally set the fire. *Id.* In agreeing with the defendant, this court stated that "[t]o permit such recovery * * *

would violate all standards of public policy and defy the administration of justice." *Id.* at 967.

Admittedly the facts of the case at hand are distinguishable from the facts in *Morin.* No one has accused Curley of having intentionally set the fire that caused her father's death. The current facts are, however, sufficiently analogous to the circumstances in *Morin* that the same reasoning may be applied.

The rationale of *Morin* was that no person should be able to benefit from his or her own wrongful act. Simply because Curley did not act intentionally does not mean she is not a wrongdoer. Curley was adjudged to be the cause of her father's death by a jury of the Superior Court. Certainly Curley is not an innocent bystander. Because of her negligence her father died. Just as the public policy of this state would be offended if we were to allow an intentional wrongdoer to benefit from his or her own malfeasance, it would be equally offended if we were to allow a negligent wrongdoer to benefit from his or her own wrongful act. *See Sartori v. United States,* 186 F.2d 679, 682 (10th Cir. 1950) (contributory negligence of beneficiary bar to action for death brought by or for such beneficiary); *Hall v. United States,* 381 F.Supp. 224, 226 (D.S.C.1974) (contributory negligence of sole beneficiary or all beneficiaries defeats action for wrongful death).

In the later case of *Walsh v. Israel Couture Post, No. 2274 V.F.W. of the United States,* 542 A.2d 1094 (R.I.1988), the plaintiff sought damages for injuries that he sustained while working at a Veterans of Foreign Wars of the United States (VFW) meeting place. The named defendant was an unincorporated association of which the plaintiff was a member. *Id.* at 1096. Although the plaintiff was acting as an independent contractor at the time he sustained his injuries, he was also a member of the association. *Id.*

As an unincorporated association engaged in a joint enterprise, each member of the VFW, including the plaintiff, was responsible for the negligent acts of other members of the association when such acts came within the scope of the joint enterprise. *Id.* Despite acting as an independent contractor at the time of his injury, the plaintiff was also within the scope of the joint enterprise. *Id.* Faced with these facts, this court noted that the "plaintiff is himself chargeable with the negligence that caused his own injury." *Id.*

On the basis of this conclusion, this court stated that "when adverse parties are members of a joint enterprise, the negligence of the defendant is imputed to the plaintiff and acts as a bar to recovery." *Id.* Such a bar is necessary because to allow recovery would create "a situation in which a party would be both plaintiff and defendant." *Id.* Such a situation "does not accord with the dictates of logic and common sense." *Id.*

Once again we concede that the facts in the case at hand are distinguishable from those in *Walsh.* We find, however, that the facts of *Walsh* are sufficiently analogous to apply the same reasoning to the case at bar.

It is clear that the personal representative of Bruse's estate has been the named plaintiff in the instant case, just as the unincorporated association was the named defendant in *Walsh.* It is equally clear that although the personal representative, and not Curley, has been the named plaintiff, the personal representative is not and will not be entitled to or receive any benefits from the $50,000 wrongful death jury award. The personal representative has been plaintiff in name only. The only person who can actually benefit in any way from the wrongful death award is Curley herself.

Because of this fact we find ourselves faced with the same situation we were faced with in *Walsh.* Curley was in all respects, absent name only, both defendant and plaintiff. She is the only person with any financial interest in the jury award. It was actually to her benefit to lose the wrongful death suit. Such a situation cannot be tolerated. As we stated in *Walsh,* to allow recovery upon facts such as these "does not accord with the dictates of logic

and common sense." *Walsh,* 542 A.2d at 1096.

We turn our attention now to legislation of this jurisdiction that is of some guidance. The legislators of this state have enacted what is commonly referred to as the "slayer's act." *See* G.L.1956 (1984 Reenactment) chapter 1.1 of title 33. Section 33-1.1-1(1) defines "slayer" as "any person who wilfully [*sic*] and unlawfully takes or procures to be taken the life of another." The reasoning behind the enactment of the slayer's act is set out in § 33-1.1-15, which states, "[T]his chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this state that no person shall be allowed to profit by his own wrong."

Once again the facts of the case at hand and the language of the slayer's act are distinguishable. The slayer's act speaks in terms of the willful and unlawful taking of a life. The facts before us now present a case of the negligent taking of a life.

The policy reason behind the enactment of the slayer's act, however, is sufficiently analogous to the policy we believe must be applied in the instant case. Stated simply, the slayer's act forbids a wrongdoer from receiving any benefit from his or her own wrongdoing. There is no question that Curley is a wrongdoer, as the jury verdicts conclusively established. There is also no question that Curley, as sole beneficiary, stands to benefit from causing the wrongful death of her father. Relying on these facts and complying with the public policy of this jurisdiction, we conclude that Curley should not be allowed to benefit from her own wrongdoing.

Because Curley would be collecting the benefits of wrongful death damages based solely upon her own wrongdoing, she was, for all intents and purposes, both plaintiff and defendant in the wrongful death action, and the public policy of this state forbids such a situation. We must therefore answer the first certified question in the negative.

## II

CAN THE PERSONAL REPRESENTATIVE OF A DECEDENT RECOVER SURVIVAL–TYPE DAMAGES UNDER G.L.1956 (1985 Reenactment) §§ 10–7–5 AND 10–7–7, FROM THE TORTFEASOR WHOSE NEGLIGENCE WAS THE SOLE PROXIMATE CAUSE OF THE DECEDENT'S DEATH WHEN THE TORTFEASOR IS ALSO THE SOLE BENEFICIARY, OR A PRINCIPAL BENEFICIARY OF THE DECEDENT'S ESTATE?

This question also presents an issue of first impression in this jurisdiction. For the reasons stated herein, we also answer this question in the negative.

Section 10–7–5 states as follows:

"Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages, in addition to the one provided for under §§ 10–7–1—10–7–4, inclusive, for the hospital, medical and other expenses incurred, including diminution of earning power until time of death, by or in behalf of the party injured by reason of such wrongful act, neglect or default, notwithstanding the death of the person injured and although the death shall have been caused under such circumstances as amount in law to a felony."

Damages recovered pursuant to § 10–7–5 "shall go to the decedent's estate and become part thereof." Section 10–7–6. In addition § 10–7–7 states that "recovery may be had for pain and suffering." Damages recovered pursuant to § 10–7–7 are also "part of the decedent's estate." *Presley,* 117 R.I. at 195, 365 A.2d at 757 (Kelleher, J., dissenting).

Turning our attention again to the facts of the case at hand, although it appears that any recovery pursuant to these sections would go to Bruse's estate for the benefit of the estate, we find it painfully

obvious that this is simply an intermediate step in the distribution process before the entire amount would go to Curley. In looking beyond the statute to view who the ultimate beneficiary will be, we are not violating the rule we set forth in *O'Leary v. Bingham*, 90 R.I. 441, 159 A.2d 619 (1960). In *O'Leary*, we stated that "until there is a judgment there can be no determination of the ultimate beneficiaries, and to hold in advance that one party or another will be the eventual, sole beneficiary is manifestly conjecture." *Id.* at 443, 159 A.2d at 620.

In the case at hand a judgment has been entered, and the beneficiaries may be properly determined. Such a determination shows that Curley is the sole beneficiary and would be entitled to receive the entire $200,000 "survival-type" damage award.

Viewing the instant case in this light, we must again, for the same policy reasons as set forth in our answer to question 1, answer this question in the negative. To allow the personal representative of an estate to maintain an action pursuant to §§ 10–7–5 and 10–7–7, when any award would go to the tortfeasor responsible for the wrongful death of the decedent, cannot be tolerated. Such an action would permit the wrongdoer to benefit from her own wrong and would violate the public policy of this jurisdiction.

. In conclusion we answer both question 1 and question 2 in the negative. The personal representative of a decedent may not recover wrongful death or "survival-type" damages when the beneficiary of these damages would be the tortfeasor responsible for the decedent's death. Because we answer question 2 in the negative, we need not address the issue presented in question 3.