### COMMERCIAL UNION INSURANCE COMPANY

v.

Raymond A. **PELCHAT** and Bruce N. **Goodsell, in his Capacity as the Administrator of the Estate of Bonnie Lynn Pelchat.**

No. 97–622–Appeal.

Supreme Court of Rhode Island.

March 24, 1999.

John F. Kelleher, Providence, for Plaintiff.

Donna M. DiDonato, Providence, for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case requires us to determine who, if anyone, is entitled to recover benefits in a wrongful death action in which a husband was the proximate cause of his new wife's death. The wrongful death act provides that a decedent's next of kin become beneficiaries in the event there are no spouse and children. Guided by our canons of statutory construction and our prior case law, we hold that the wrongful death act permits recovery of benefits by a decedent's next of kin where, as here, the spouse is not legally entitled to recover.

### Facts and Procedural History

Raymond Pelchat (Raymond) and Bonnie Lynn Dumas Pelchat (Bonnie Lynn) were married on May 13, 1989. Raymond drove the car in which they left their wedding reception in the early morning hours of May 14, 1989. Tragically, the car was involved in an accident in which Bonnie Lynn was killed. The car was owned by Bonnie Lynn and insured by Commercial Union Insurance Company (Commercial Union), plaintiff in this case. On January 3, 1991, Raymond pleaded *nolo contendere* to the charge of Driving Under the Influence—Death Resulting.[1]

---

1. Two blood alcohol tests were performed upon Raymond after the accident. The first showed a

On the basis of this plea, Philip M. Sloan, Jr.,[2] administrator of the estate of Bonnie Lynn Pelchat (estate), filed a wrongful death action in the Superior Court[3] naming Raymond and others as defendants and seeking damages pursuant to G.L.1956 § 10–7–1.1 of the wrongful death act. Under the terms of Bonnie Lynn's auto insurance policy, Commercial Union was required to—and did—defend Raymond in the suit. In addressing the distribution of Bonnie Lynn's estate,[4] the Probate Court of the Town of Richmond, in 1991, had entered a miscellaneous petition applying the slayer's act and thereby prohibited Raymond from inheriting from the estate.

In November of 1992, Commercial Union filed a declaratory judgment action seeking relief from any further obligation to defend or indemnify Raymond in the wrongful death suit. Both parties filed motions for summary judgment. After hearing arguments, a justice of the Superior Court denied both motions without prejudice. With regard to plaintiff's motion, the trial justice explained that *O'Leary v. Bingham*, 90 R.I. 441, 159 A.2d 619 (1960), mandated that a trial court could "not make a determination as to the identity of beneficiaries until a judgment has been entered awarding damages."

On July 7, 1997, following a hearing in the Superior Court on the wrongful death action, a settlement between Raymond and the estate was filed. As part of this settlement, Raymond admitted liability in Bonnie Lynn's death and submitted to judgment. A consent order was entered and sealed by the Superior Court. The judgment was stayed, however, pending a determination in a declaratory judgment action of the proper beneficiaries of the wrongful death proceeds.

Subsequent to the settlement in the wrongful death suit, Commercial Union renewed its motion for summary judgment in a declaratory judgment action before a differ-

ent justice. The trial justice found that Raymond and Bonnie Lynn were legally married at the time of the accident, and he rejected Commercial Union's argument that Bonnie Lynn's parents "ceased being possible beneficiaries of any recovery of wrongful death damages" at the moment of Bonnie Lynn's marriage. In addition, the trial justice denied Commercial Union's motion for summary judgment and ruled in favor of the administrator of the estate. The court explained, "[p]ublic policy mandates that there should be recovery in cases of wrongful death. Section 10–7–2 merely establishes a priority ladder to whom such damages should go. Although Raymond Pelchat is 'on the top rung,' he cannot recover based on the reasons discussed in *[Aetna Casualty and Surety Co. v.] Curley[*, 585 A.2d 640 (R.I. 1991)]. Removing him from the list of possible beneficiaries does not extinguish the list, as was the case in *Curley*."

The administrator also argued that this case was controlled by the slayer's act, G.L. 1956 chapter 1.1 of title 33, which prohibits "slayers" from benefiting from their wrongful conduct. Section 33–1.1–15. The trial justice accepted this argument as an alternative ground for his holding and explained that Raymond's conduct "was an act of such reckless disregard as to rise to the level of wilful conduct as a matter of law. As such, * * * the slayers act applies to this case, and Raymond Pelchat shall be deemed to have predeceased the decedent. Accordingly, the beneficiaries of the damages in the wrongful death action are Bonnie Lynn's next of kin, Richard and Esther Dumas."

### Collateral Estoppel

The administrator argued that the Probate Court's determination that the slayer's act prohibited Raymond from inheriting from the estate collaterally estopped Commercial

blood alcohol level of .11; the second, administered thirty minutes later, indicated a blood alcohol level of .10.

2. At the time this action was originally filed, Philip M. Sloan, Jr. was the administrator of the estate, but he has since been replaced by Bruce N. Goodsell.

3. The administrator filed a wrongful death action, number WC 92–275 on May 13, 1992.

4. General Laws 1956 § 10–7–10 of the wrongful death act directs that damages recoverable under that act are not considered "in any way an asset of the estate of the decedent * * *."

Union from litigating that issue in the declaratory judgment action. The administrator contended that "[t]he identical issue raised by [Commercial Union] in the instant case [the declaratory judgment action] has already been addressed, adjudicated and decided upon [in 1991] in a prior [probate] court case. The final judgment of the Richmond Probate Court bars the claim presented by [Commercial Union]."

■ It is axiomatic that in order for collateral estoppel to apply, "there must be an identity of issues; the prior proceeding must have resulted in a final judgment on the merits; and the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding." *State v. Chase*, 588 A.2d 120, 122 (R.I. 1991). The doctrine of collateral estoppel directs that an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings. *Mulholland Construction Co. v. Lee Pare & Associates, Inc.*, 576 A.2d 1236, 1238 (R.I.1990).

■ The administrator advanced this argument before the first trial justice, who concluded that collateral estoppel was not applicable. The justice explained: "Even assuming the issue of applicability of the Slayer's Act was fully litigated and finally determined in the Probate Court [in 1991], this Court is of the opinion that the Probate Court's decree cannot estop Commercial Union from litigating the issue in this action. This is because Commercial Union was not a party to the proceedings in the Probate Court, nor was it in privity with Mr. Pelchat in that decision."

Under the concept of privity, a non-party may be bound by a prior judgment if that party substantially controlled or was represented by a party to the original action. Restatement (Second) *Judgments* §§ 39, 41 (1982). "Parties are in privity when 'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests." *Studio Art Theatre of Evansville, Inc. v. City of Evansville, Indiana*, 76 F.3d 128, 131 (7th Cir.), cert. denied, 519 U.S. 866, 117 S.Ct. 177, 136 L.Ed.2d 117 (1996) (quoting *Tofany v. NBS*

*Imaging Sys., Inc.*, 597 N.E.2d 23, 29 (Ind. Ct.App.1992)); *see also Providence Teachers Union, Local 958, American Federation of Teachers, AFL–CIO v. McGovern*, 113 R.I. 169, 172, 319 A.2d 358, 361 (1974) (holding that collateral estoppel was not applicable because the treasurer was neither a party to, nor in privity with a party to the prior litigation). It is clear that Commercial Union and Raymond did not share a commonality of interests. In the declaratory judgment action, for example, Commercial Union argued that it should be relieved of defending Raymond in the wrongful death suit. Commercial Union's interest, therefore, conflicted with Raymond's interests. In fact, in its complaint, Commercial Union explained that it was bringing a separate declaratory judgment action because it was "precluded from raising the issues underlying the present action within the wrongful death act because of a potential conflict of interest and due to the constraints of the Rules of Professional Conduct * * *." Therefore, Commercial Union was not bound by the prior judgment to which it was neither a party nor in privity with a party to the Probate Court action. Accordingly, we affirm the trial justice's ruling that Commercial Union was not barred by collateral estoppel from litigating the issue of the applicability of the slayer's act in this case.

### Wrongful Death Act

■ The wrongful death act, G.L.1956 chapter 7 of title 10, confers a right of action on certain enumerated individuals to recover damages for the death of a family member. *Presley v. Newport Hospital*, 117 R.I. 177, 180, 365 A.2d 748, 749–50 (1976). Its purpose is expressed in § 10–7–1 of the act:

"Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although

the death shall have been caused under such circumstances as amount in law to a felony."

Section 10–7–2 continues by enumerating those individuals entitled to recover in a wrongful death action:

"Every action under this chapter * * * shall be brought by and in the name of the executor or administrator of the deceased person * * * and of the amount recovered in every action under this chapter one-half (½) shall go to the husband or widow, and one-half (½) shall go to the children of the deceased, and if there are no children, the whole shall go to the husband or widow, and, if there is no husband or widow, to the next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate * * *."

Thus, the statute directs that first priority in recovery of damages be afforded to the spouse and children of the decedent in equal parts. If no children exist, then all recovery shall go to the spouse, and if there is no spouse, then the amount recovered is distributed to the next of kin as if the decedent died intestate. In this case, the next of kin are Bonnie Lynn's parents. Commercial Union argued that because Bonnie Lynn's husband, Raymond, was still alive, and the couple did not have any children, Raymond was the only permissible statutory beneficiary of wrongful death benefits. Commercial Union also took the position that the trial justice, in ruling that the wrongful death damages could pass to Bonnie Lynn's parents, "ignored the express intention of the legislature." Resolution of this issue, then, requires us to interpret § 10–7–2 by determining whether, under the circumstances of this case, no beneficiary exists—as Commercial Union has argued—or whether the trial justice correctly ruled that Bonnie Lynn's parents are the proper beneficiaries.

■ As the final arbiter on questions of statutory construction, *In re Advisory to the Governor (Judicial Nominating Commis-*

sion), 668 A.2d 1246, 1248 (R.I.1996); *Matter of Falstaff Brewing Corp.*, 637 A.2d 1047, 1049–50 (R.I.1994), "this Court examines statutory provisions in their entirety, attributing to the act the meaning most consistent with the policies and purposes of the Legislature." *In re Advisory to the Governor*, 668 A.2d at 1248 (citing *Falstaff*, 637 A.2d at 1049–50; *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987)). Although we must give words their plain and ordinary meanings, in so doing we must not construe a "statute in a way that would result in 'absurdities or would defeat the underlying purpose of the enactment.' * * * In particular, '[i]f a mechanical application of a statutory definition produces an absurd result or defeats legislative intent, this [C]ourt will look beyond mere semantics and give effect to the purpose of the act.'" *Falstaff*, 637 A.2d at 1050 (quoting *Brennan*, 529 A.2d at 637; *Labbadia v. State*, 513 A.2d 18, 22 (R.I.1986)).

■ At common law, a decedent's family could not maintain an action for recovery of damages for a wrongful death. *Curley*, 585 A.2d at 642; *Hall v. Knudsen*, 535 A.2d 772, 774 (R.I.1988). In response to this harsh rule, the Rhode Island Legislature, like that in most states,[5] passed the wrongful death act modeled after Lord Campbell's Act that permitted a "right of action for wrongful death on behalf of a spouse, parent, or child of the decedent." *Hall*, 535 A.2d at 774. Our application of the wrongful death act to the facts of this case is informed not only by its legislative purpose and by our principles of statutory construction but also is prescribed by our holding in *Curley*. The issue in *Curley* was whether an heir, who was the decedents daughter, could recover wrongful death damages given the fact that her negligence was the sole proximate cause of her father's death. *Curley*, 585 A.2d at 642. We concluded in that case that public policy required us to answer in the negative. *Id.* at 643. We explained, "[b]ecause of [the heir's] negligence her father died. Just as the public policy of this state would be offended if we

---

5. "Between 1846 and the introduction of the Civil Rights Act of 1871, thirty (30) of the thirty-seven (37) American states adopted general wrongful death statutes patterned after Lord

Campbell's Act. Today, every state has some form of wrongful death statute." Steven H. Steinglass, *Section 1983 Wrongful Death Remedies*, 449 PLI/Lit 303, 314.

were to allow an intentional wrongdoer to benefit from his or her own malfeasance, it would be equally offended if we were to allow a negligent wrongdoer to benefit from his or her own wrongful act." *Id.* Similarly here, Raymond, at a minimum, negligently caused the death of Bonnie Lynn. Accordingly, we are persuaded that our rationale in *Curley* precludes Raymond from benefiting in any manner from the proceeds of the wrongful death action.

Although in *Curley*, the tortfeasor was not the decedent's only relative, "it was agreed to by the parties that [the tortfeasor was] the sole heir of [the decedents] estate." *Id.* at 640. Thus, the question presented in *Curley* was limited to whether the tortfeasor was entitled to the wrongful death proceeds; no other heirs of the decedent claimed an entitlement to the proceeds. *Curley*, therefore, is instructive but not conclusive in determining whether anyone in this case is entitled to recover benefits. Under the policy established in *Curley*, Raymond clearly is not entitled to recover. We now must confront the question left unanswered by *Curley*: can a decedents next of kin recover if the decedents husband is alive, but not legally entitled to recover?

We are guided by the canon of statutory construction that we must interpret the words of a statute in their plain and ordinary meanings and not in a manner that produces an absurd result. *Falstaff*, 637 A.2d at 1049–50. The adoption of Commercial Unions argument that § 10–7–2 precludes recovery *by anyone* in this case would, in our opinion, produce an absurd result. Therefore, we reject plaintiff's argument and instead favor a construction that comports with the legislative purpose of providing persons a means of recovering for the wrongful death of a family member. Accordingly, we interpret the words of § 10–7–2, "if there is no husband," to intend "if there is no husband legally entitled to recover." In this case, the next of kin in the list of statutory beneficiaries are Bonnie Lynn's parents. In so holding, we affirm the judgment of the trial justice that Bonnie Lynn's parents are entitled to receive benefits pursuant to § 10–7–2.

The administrator argued in the alternative that he was entitled to recover the wrongful death proceeds because Bonnie Lynn and Raymond were not legally married at the time Bonnie Lynn was killed, and therefore Bonnie Lynn should be treated as having been single for purposes of § 10–7–2. The estate so contended because Commercial Union lacked proof that the couple's ceremonial marriage was consummated. We point out, however, that "it is uniformly held that consummation through sexual intercourse or cohabitation is not a requirement of a valid ceremonial marriage. As soon as the ceremony is over, the parties have entered the binding relationship of husband and wife." 52 Am.Jur.2d *Marriage* § 12 (1970). *See also In re Marriage of Burnside*, 777 S.W.2d 660, 663 (Mo.App.1989) (same). Here, Commercial Union introduced a marriage license and a certificate which indicated that Raymond and Bonnie Lynn were married in a religious ceremony on May 13, 1989. Accordingly, we affirm the findings of both trial justices that Bonnie Lynn and Raymond were legally married at the time of Bonnie Lynn's death.

The administrator also argued that Bonnie Lynn's parents were the proper beneficiaries of the wrongful death action because the "Slayers Act," chapter 1.1 of title 33, prohibited Raymond from receiving any benefits resulting from the death of Bonnie Lynn. The trial justice accepted this argument as an alternative basis for his holding. While we agree with the ultimate resolution by the trial justice, we hold that he erred in finding that the slayer's act applied to the facts of this case.

Generally, the slayer's act prohibits "slayers" from benefiting from their own wrongful conduct. Section 33–1.1–15. Section 33–1.1–1(3) defines "slayer" as "any person who *wilfully and* unlawfully takes or procures to be taken the life of another." (Emphasis added.) In *Aetna Casualty and Surety Co. v. Curley*, 585 A.2d 640 (R.I.1991), a father's death resulted from injuries he sustained in a fire caused by his daughter's negligence. We emphasized there that the negligent taking of life was not wilful and unlawful as required by the clear language of the slayer's act. In the case of Bonnie Lynn and Ray-

mond, contrary to the trial justice's finding, Raymond's actions were not wilful *and* unlawful. Consequently, the slayer's act is inapplicable to the facts of this case; the act is relevant to our holding here only insofar as it contributed to and informed the doctrine that we established in *Curley*.

### Law of the Case

Commercial Union also argued that the law of the case doctrine required the trial justice to find that the estate was not entitled to recover damages pursuant to § 10–7–1.1. Under the law of the case doctrine, "ordinarily, after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling." *Salvadore v. Major Electric & Supply, Inc.*, 469 A.2d 353, 355–56 (R.I.1983). This precept ensures the stability of decisions and avoids unseemly contests between judges that could result in a loss of public confidence in the judiciary. *Id.* at 356. Contrary to Commercial Union's assertions, however, the second trial justice did not disturb any findings made by the first trial justice.

The first trial justice explicitly declined to rule on the issue of the applicability of the slayer's act, explaining that that issue *could* be litigated in the *future,* following a judgment in the wrongful death action. The justice stated, "the Court concludes that should [Raymond] Pelchat's beneficiary status be made an issue by a wrongful death judgment, *Commercial Union would not be estopped from litigating the application of the slayers act to distribution of those benefits.*" (Emphasis added.) Thus, the law of the case doctrine has no applicability here.

### Conclusion

For the foregoing reasons, we deny and dismiss the plaintiff Commercial Union's appeal. Although our rationale differs in part from that of the trial justice, we affirm the judgment of the Superior Court, to which the papers in this case may be returned.