### Virginia L. SINDELAR

v.

### Luis G. LEGUIA.

### No. 98–555–Appeal.

Supreme Court of Rhode Island.

May 17, 2000.

Dean G. Robinson, Warwick, for plaintiff.

Lauren E. Jones, Providence, Peter Brent Regan, Newport, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiff-mother, Virginia L. Sindelar, appeals from a Superior Court hearing justice's grant of summary judgment in favor of the defendant-father, Luis G. Leguia. She asserts that the trial justice committed error by granting summary judgment, arguing in effect, that our Wrongful Death Act recognizes an "absentee parent" exception to recovery of certain wrongful-death proceeds, and that therefore there existed genuine issues of material fact as to whether the defendant-father enjoyed a sufficient familial relationship with their decedent-son to allow him to share one-half those proceeds. This case came before us pursuant to an order directing the parties to appear on April 4, 2000, and to show cause why the issues raised in this appeal should not be summarily decided. No cause has been shown, and we now proceed to decide the issues before us.

I

### Case Facts and Travel

The marriage between Virginia L. Sindelar (Sindelar) and Luis G. Leguia (Leguia) ended in divorce in 1982, and the

parties were granted joint custody of their two children, Gregor and Carl, with physical custody of both children granted to Sindelar. Leguia was ordered to pay child support, which he did until both children reached the age of majority. Leguia also provided health insurance for the children and contributed toward their college tuition expenses. On November 30, 1996, Gregor, the older son, then aged twenty-nine, was killed in an automobile accident in Rhode Island. At the time of his death, Gregor was unmarried, had no children, and left no will. Neither parent was involved in the accident. Sindelar, on subsequent petition, was appointed administrator of Gregor's estate by the Burrillville Probate Court in March 1997.

Sindelar proceeded to settle various wrongful death claims on behalf of Gregor's estate for net proceeds of approximately $116,000. In November 1997, Sindelar filed a motion in the probate court, seeking to deny Leguia any portion of the wrongful-death settlement proceeds, asserting that Leguia's long-standing lack of contact with Gregor barred him from recovery under G.L.1956 chapter 7 of title 10, Rhode Island's Wrongful Death Act (the Act). Her probate court motion was denied and she appealed to the Superior Court.

In Superior Court, Leguia moved for summary judgment. He first noted in his motion that he had paid any and all necessary child support required during Gregor's minority and also that he was not involved in Gregor's accident and resulting death. He thus asserted that, as a matter of law, under the Act and under Rhode Island intestacy law, he was entitled to a half share of the wrongful-death settlement proceeds, regardless of the nature or quality of his relationship with Gregor prior to Gregor's death. Sindelar however, asserted that the Act was intended by the General Assembly to provide some level of compensation only to the decedent's heirs at law who possessed a reasonable expectation of pecuniary benefit from the ongo-ing life of the decedent, advocating a so-called "absentee parent" exception to recovery. Consequently, she asserted that because Leguia had no relationship with Gregor other than by visitation rights from the date of the divorce, he had no reasonable expectation of pecuniary benefit from his life and should be barred from receiving a pecuniary windfall therefrom. The hearing justice, after considering the parties' arguments, concluded that in this case, distribution of damages was fixed by the plain language of the Act, and thus Leguia was entitled to receive his statutory share of the wrongful-death settlement proceeds, without judicial inquiry into the quality or nature of his relationship with Gregor. Accordingly, he ordered the pending judgment of distribution to enter in the probate court. Sindelar has timely appealed to this Court, asserting first that the hearing justice erred by granting summary judgment because no discovery was conducted and no supporting affidavits were filed by Leguia, thus making the summary judgment motion procedurally defective, and secondly that the hearing justice erred as a matter of law in interpreting the Act not to require some level of familial relationship between parent and child as a perquisite to recovery under the Act. For the reasons hereinafter stated, we deny the plaintiff's appeal and sustain the grant of summary judgment.

II

Standard of Review

■■■ "In reviewing the grant of a summary judgment motion, this Court employs the same standard on review as the trial justice. We must examine all of the pleadings, memoranda and affidavits 'in the 'light most favorable to the party opposing the motion.'" *Truk–Away of Rhode Island, Inc. v. Aetna Casualty & Surety Co.,* 723 A.2d 309, 313 (R.I.1999) (quoting *Splendorio v. Bilray Demolition Co.,* 682 A.2d 461, 465 (R.I.1996)). We conduct such a de novo analysis "to decide whether an issue of material fact exist[s] and

whether the moving party [is] entitled to summary judgment as a matter of law." *Buonanno v. Colmar Belting Co.,* 733 A.2d 712, 715 (R.I.1999) (quoting *Textron, Inc. v. Aetna Casualty and Surety Co.,* 638 A.2d 537, 539 (R.I.1994)). Finally, as is particularly pertinent to the case at bar, "[s]ummary judgment is proper when there is no ambiguity as a matter of law." *Id.* (quoting *Textron, Inc.,* 638 A.2d at 539).

### III

### The Summary Judgment Motion

Sindelar first asserts on appeal that the summary judgment motion, lacking supporting affidavits and relevant discovery, was not procedurally ripe for consideration by the hearing justice. She argues that the dearth of such supporting materials meant that the hearing justice could not have had a complete and proper understanding of the legal and factual issues presented within the case to have properly awarded summary judgment. We disagree.

 We begin by noting that Rule 56(b) of the Superior Court Rules of Civil Procedure provides that a defending party "may, at any time, move with or without supporting affidavits for summary judgment in the party's favor as to all or any part thereof." Thus, a lack of supporting affidavits simply cannot be error, as Sindelar contends in this case. The plain language of the rule requires only that for summary judgment to enter, there be no genuine issues of material fact and that judgment for the moving party be appropriate as a matter of law. As will be discussed in detail *infra,* we believe that here there were no material facts to be litigated and, consequently, that the trial justice properly disposed of the case as a matter of law. His decision to do so is amply supported by the record we have before us, and in no way can we say that

he approached the case before it was procedurally ripe for summary judgment or was somehow anything less than fully informed on the issues presented by the instant matter.

### IV

### The Wrongful Death Act

Sindelar next asserts that the hearing justice erred by granting summary judgment in favor of Leguia because the justice incorrectly interpreted and applied the Act. She asserts that the Legislature, by using the term "pecuniary damages" in § 10–7–1.1 of the Act, intended to provide recovery solely to those persons who had a legitimate expectation of benefits from the continued life of the decedent. She contends therefore that Leguia, as an allegedly absentee father, had no such expectation from the life of Gregor and thus should be precluded from garnering any benefit from his untimely death.

 "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Union Village Development Associates v. Town of North Smithfield Zoning Board of Review,* 738 A.2d 1084, 1086 (R.I.1999) (quoting *Providence & Worcester Railroad Co. v. Pine,* 729 A.2d 202, 208 (R.I.1999)). "Once having done that, our 'work of judicial interpretation is at an end.'" *Kelly v. Marcantonio,* 678 A.2d 873, 877 (R.I.1996) (quoting *DeAngelis v. Rhode Island Ethics Commission,* 656 A.2d 967, 969 (R.I.1995)). Finally, we note that where, as here, a statute operates in the derogation of the common law, we are charged with a strict interpretation of the General Assembly's language.[1] *Kelly,* 678 A.2d at 876.

We have held that "[t]he wrongful death act, G.L.1956 chapter 7 of title 10, confers a right of action on certain enumerated

---

1. At common law, the decedent's family could not pursue an action to recover for wrongful-

death damages. *Aetna Casualty and Surety Co. v. Curley,* 585 A.2d 640, 642 (R.I.1991).

individuals to recover damages for the death of a family member." *Commercial Union Insurance Co. v. Pelchat,* 727 A.2d 676, 680 (R.I.1999) (citing *Presley v. Newport Hospital,* 117 R.I. 177, 180, 365 A.2d 748, 749–50 (1976)). Section 10–7–2 sets out those entitled to recover under the Act:

"Every action under this chapter, other than one brought under § 10–7–1.2, shall be brought by and in the name of the executor or administrator of the deceased person, whether appointed or qualified within or without the state, and of the amount recovered in every action under this chapter one-half (½) shall go to the husband or widow, and one-half (½) shall go to the children of the deceased, and if there are no children, the whole shall go to the husband or widow, and, if there is no husband or widow, to the next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate * * *."

The plain language of the statute indicates that if the decedent dies childless, then all of the amount recovered "shall" go to the decedent's spouse, and if there exists no spouse nor children, then the entire amount recovered "shall" be distributed to the next of kin as if the decedent died intestate. In the instant case, Gregor died leaving no wife and no children, and therefore under Rhode Island intestacy law, the amount recovered in the wrongful death action is to be shared equally by his parents, as his heirs at law.

■ While § 10–7–2 of the Act recognizes an exception to recovery for those parents who have failed to pay child sup-

port,[2] and we have recognized the so-called "cause of death" exception to recovery, *see Aetna Casualty and Surety Co. v. Curley,* 585 A.2d 640 (R.I.1991), we conclude there simply is no reason to promulgate and thus to carve, by naked judicial fiat, a further exception into the Act that purports to test the strength of parental bonds between a parent and a decedent child before awarding recovery to a parent under the Act.

In reaching this conclusion, we find controlling the plain language of the statute itself. We, as did the hearing justice, glean no language whatsoever indicating the need for a judicial inquiry to determine the worthiness of the relationship between a decedent and an enumerated taker under § 10–7–2. Sindelar, however, would have us turn the plain language of § 10–7–2 and § 10–7–1.1 on its head by accepting her argument that the General Assembly intended pecuniary damages to encompass only those takers under the Act who reasonably expected a benefit from the continuing life of the decedent.[3] We observe that the term "pecuniary damage" is statutorily determined in the Act in § 10–7–1.1:

"Pecuniary damages to the beneficiaries described under § 10–7–2 and recoverable by the beneficiaries shall be ascertained as follows:

(1) Determine the gross amount of the decedent's prospective income or earnings over the remainder of his or her life expectancy, including all estimated income he or she would probably have earned by his or her own exertions, both physical and mental."

That statutory definition is in complete harmony with the commonly accepted defi-

---

2. General Laws 1956 § 10–7–2 provides in part:

"no person who is adjudged to be in willful contempt of being in excess of six (6) months in arrears of an order to pay child support for the deceased individual shall be allowed recovery pursuant to this chapter and a person so adjudged shall be deemed to have predeceased the child for the purpose of determining distribution under the intestacy statute."

3. Such an interpretation could very well have the inverse, and surely unintended, effect of depriving a child abandoned by a parent any benefit of wrongful-death damages from the death of that parent. It is well settled that when construing a statute, we refrain from reaching results that create absurdity or defeat the underlying intent of the statute. *Commercial Union Insurance Co. v. Pelchat,* 727 A.2d 676, 681 (R.I.1999).

nition of pecuniary damages used throughout Rhode Island case law and used by persuasive authorities and creates no ambiguity in its interpretation. *See e.g.* Black's Law Dictionary 396 (7th ed.1999) (pecuniary damages defined as "[d]amages that can be estimated and monetarily compensated"). We simply perceive nothing in the plain and ordinary definition of "pecuniary damages" or in the § 10–7–1.1 determination of "pecuniary damages" establishing any requirement that a putative taker under the Act have some expectation, reasonable or otherwise, of a benefit from the life of the decedent.

Rather, we stress that § 10–7–1.1, by its plain meaning, encompasses purely economic damages to the decedent, directed to the beneficiaries in § 10–7–2. By marked contrast, we note that § 10–7–1.2, by its plain language, allows for the bringing of a claim for loss of consortium, where a preexisting relationship between decedent and survivor is indeed relevant to recovery. Although inapplicable to the case at bar because Gregor was an adult at the time of his death, the existence of such a provision clearly indicates that if the Legislature intended damage computation under § 10–7–1.1 to encompass more than a determination of pure economic damages to the decedent, it would have so provided within that section.

Sindelar next cites our holding in *Curley,* the so-called "cause of death" exception case, for the proposition that this Court is willing and able to carve out exceptions to the mechanical distribution rules under the Act under certain circumstances. We disagree. In *Curley,* we applied this jurisdiction's well settled public policy in concluding that a tortfeasor should not benefit from his or her own wrongdoing and was thus precluded from recovery under the Act, where that .tortfeasor's negligence was adjudged the proximate cause of the decedent's death. *Curley,* 585 A.2d at 643. In reaching that result, we gleaned ample support from Rhode Island precedent and were particu-

larly mindful of the liberal preamble language in the so-called Slayer's Act, G.L. 1956 chapter 1.1 of title 33, providing: "[t]his chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this state that no person shall be allowed to profit by his or her own wrong." Section 33–1.1–15. In light of such a clear statement of statutory intent from the General Assembly, we concluded in *Curley* that any contrary interpretation and holding would have been repugnant to the stated public policy of the state and would have been in disharmony with the legislative statutory schemes relating to intestacy and distribution. We find no such analogous circumstances in the case before us. Although we certainly recognize and appreciate the desirability and importance of ongoing parental contact and support for their children, we simply ascertain no legislative intent or stated public policy, as found in *Curley,* requiring Rhode Island courts to test those familial bonds to decide their worthiness for recovery under the Act. Mindful that our assigned task is simply to interpret the Act, not to redraft it, any attempt to create an "absentee-parent" exception "must take place within a legislative rather than a judicial setting." *Cardi Corp. v. City of Warwick,* 122 R.I. 478, 479, 409 A.2d 136, 137 (1979).

Sindelar finally claims that other jurisdictions have grappled with the "absentee-parent" exception, and these courts have concluded that such a parent cannot enjoy recovery under applicable wrongful death law, most notably in *Guy v. Johnson,* 15 Mass.App.Ct. 757, 448 N.E.2d 1142 (Mass. 1983). There, in the context of an absentee father seeking to recover damages for the wrongful death of his son, the Massachusetts court found that a parent "disassociated from the decedent * * * cannot justly claim that the decedent had any monetary value for him." *Id.* at 1145. It simply suffices to say that *Guy* is clearly distinguishable and inapposite to the issue before us because the Massachusetts court was interpreting a statutory section recog-

nizing damages akin to loss of consortium, including compensation for loss of "protection, care, assistance, society, companionship [and] comfort." *Id.* at 1144 (quoting Mass. General Laws ch. 229, § 2). Those damages clearly go beyond the pecuniary damage determinations prescribed in § 10–7–1.1. Accordingly, we cannot draw any meaningful comparison between our Rhode Island Wrongful Death Act provisions and the Massachusetts court's Wrongful Death Act interpretative caselaw, and conclude the holding in *Guy* is not relevant to the case before us.

For the reasons stated above, the plaintiff's appeal is denied and the grant of summary judgment by the Superior Court is affirmed. The papers in this case are remanded to the Superior Court.