Michael RUBINO

v.

Donna RUBINO.

No. 99–443–Appeal.

Supreme Court of Rhode Island.

Feb. 12, 2001.

Colleen Crudele, Steven M. Ortoleva, Warwick, for Plaintiff.

William Landry, Providence, Nicholas L. Colangelo, North Providence, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

Weisberger, Chief Justice.

This case came before the Court, pursuant to the appeal of the defendant, Donna Rubino (Donna or defendant), from a decision of a Family Court justice granting the parties a divorce and concluding that the rights and liabilities of the parties, pursuant to the divorce, were to be determined by the provisions of G.L.1956 § 15–5–16.1, the equitable distribution statute, rather than the terms of the antenuptial agreement signed by the parties two days before they were married. The facts insofar as pertinent to this appeal are as follows.

Donna and Michael Rubino (Michael or plaintiff) were married on December 19, 1997. At the time of their marriage, defendant had a five-year-old child from a previous marriage, Christopher, and plaintiff had two children from a previous marriage, Michael and Alicia.

On December 17, 1997, Donna and Michael executed an antenuptial agreement. The purpose of that agreement was to fix and determine the rights of each of them, including the children, to certain property

in the event that the marriage was terminated by divorce. Among other things, the agreement provided that all assets "acquired by the parties as joint tenants with the right of survivorship shall be divided equally between the parties," but that "[a]ssets owned by each party individually, any additions or accessions thereto, and any assets acquired in the future by gift or by inheritance shall be and remain the sole property of that individual to the exclusion of the other." The agreement also required plaintiff to transfer certain of his assets to himself and defendant as joint tenants or tenants by the entirety, and to add defendant as a beneficiary on cert.in accounts and insurance policies. Furthermore, the agreement provided that "the parties each expressly and permanently waive any right of any kind to alimony and/or temporary or permanent support or payments in lieu thereof from each other, including without limitation, any form of 'temporary allowances,' pending a hearing for divorce or other proceeding." Finally, the agreement provided that "[a]ny modification or waiver of any of the provisions of [the a]greement shall be effective only if made in writing and executed with the same formality" as the original agreement.

On February 17, 1998, approximately two months after they were married, plaintiff filed a petition for absolute divorce against defendant. The plaintiff alleged that irreconcilable differences had arisen between the parties that had resulted in the irremediable breakdown of the marriage. In his complaint, plaintiff sought an equitable distribution of the assets of the marriage in accordance with § 15–5–16.1, as well as counsel fees, the exclusive right to the marital domicile, and an injunction against defendant restraining her from "bothering, harassing, threatening, assaulting and or interfering with * * * plaintiff." The defendant answered the complaint and counterclaimed; she also filed a motion for a temporary restraining order and temporary allowances on that same day. Like plaintiff, defendant also sought an equitable distribution of the as-

sets of the marriage in accordance with § 15–5–16.1, the exclusive use of the marital domicile, and an injunction against plaintiff. The initial complaint, answer, and counterclaim contained no reference to the antenuptial agreement and no request to enforce its provisions; however, the motion for a temporary restraining order does mention the agreement.

In February 1998, a Family Court justice signed an *ex parte* order in favor of plaintiff. That order restrained defendant from alienating certain assets and removed her from the marital domicile. That same justice also granted similar relief to defendant, short of removing plaintiff from the home. Thereafter, both plaintiff and defendant filed contempt motions alleging that the other party had dissipated and transferred various named assets in violation of the previous order. On March 5, 1998, another order was entered mutually restraining plaintiff and defendant from assaulting, molesting, or threatening each other, and further restraining them from alienating, selling, or encumbering any assets. The plaintiff was also ordered to withdraw $5,000 from a Prudential Advantage account held in plaintiff's and defendant's names as joint tenants and to advance that money to defendant "as an advancement on her award of equitable distribution."

Thereafter, in May 1998, before the Family Court proceeding began, defendant filed a complaint in the Superior Court, individually and as a parent and next friend of Christopher, requesting specific performance of the antenuptial agreement. On June 18, 1998, a Family Court justice ordered defendant to dismiss the Superior Court action, and on October 29, 1998, defendant filed an amended counterclaim in the Family Court in which she sought specific performance of the antenuptial agreement. The divorce action subsequently was heard on January 6, 1999, by a second Family Court justice. That justice found that there were "indeed irrecon-

cilable differences between [the parties] which ha[d] resulted in the irremediable breakdown of [the] marriage."

The sole issue at trial was whether the respective property rights of the parties should be determined in accordance with the equitable distribution statute or according to the antenuptial agreement signed by the parties. At the time of trial, plaintiff's attorney argued a motion *in limine* to preclude defendant from asserting any rights under the antenuptial agreement. The plaintiff's attorney argued that because defendant had accepted a $5,000 payment as an advancement on her statutory right to equitable distribution, she had waived her right to enforce the antenuptial agreement. The trial justice denied the motion. She held:

"Clearly [Donna Rubino] has a right to seek relief protection, and clearly she has a right to seek relief regarding dissipation of funds. The motion that she filed * * * clearly does contain many pages referencing the [antenuptial] agreement that was executed here. It does not appear * * * that this motion was filed in contravention of the [antenuptial] agreement at all.

"I agree with [Donna Rubino's] argument * * *. At this point in time, one would have to first determine this antinuptial [*sic* ] agreement is a valid one."

On April 20, 1999, the justice concluded in a bench decision that:

"[T]he defendant wife is precluded from enforcing [the provisions of the antenuptial agreement]. * * * Accepting the fact [that] the wife requested specific performance of [the] contract in her amended counterclaim relating back effectively to February 20, 1998, I find she has indeed abandoned the provisions of that contract by later accepting statutory relief. In accepting temporary support less than one month after filing this counterclaim to enforce the contract, she proceeded in total violation of the intent, spirit, and unambiguous wording of that contract. The language of that order is

clear and it is also not ambiguous. The monies received were * * * [']advancements on equitable distribution.[']"

Therefore, she determined the rights and liabilities of the parties to each other's property in accordance with the equitable distribution statute, § 15–5–16.1. Applying the provisions of that statute, she concluded that, because the marriage was so short, and because no marital assets were acquired during the marriage, there were no assets to distribute. She also found that each party was able to support him or herself without the need of alimony. However, she did allow the $5,000 award to defendant to stand. The defendant appealed.

■ The sole issue on appeal before this Court is whether the trial justice erred in concluding that defendant had abandoned her rights under the antenuptial agreement simply by filing a motion for temporary orders and accepting $5,000 from the parties' joint account as an advance equitable distribution of marital assets. The defendant argues that, under Rhode Island law, antenuptial agreements are enforceable and must be upheld under all but extreme circumstances, which are not present in this case. The defendant also argues that the trial justice erred in concluding that she had abandoned her rights under the antenuptial agreement.

In Rhode Island, antenuptial agreements are governed by the Uniform Premarital Agreement Act (Act), which is codified in G.L.1956 chapter 17 of title 15. The Act does not specifically address the abandonment issue raised by defendant in the instant case. The Act does, however, provide that an antenuptial agreement is enforceable unless the party against whom enforcement is sought proves that:

"(1) That party did not execute the agreement voluntarily; and

"(2) The agreement was unconscionable when it was executed and, before execution of the agreement, that party:

(i) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(ii) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(iii) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

"(b) The burden of proof as to each of the elements required in order to have [an antenuptial] agreement held to be unenforceable shall be on the party seeking to have the agreement declared unenforceable and must be proven by clear and convincing evidence." Section 15–17–6.

Furthermore, § 15–17–5 of the Act provides that "[a]fter marriage, [an antenuptial] agreement may be amended or revoked only by a written agreement signed by the parties."

▉ "As the final arbiter on questions of statutory construction, * * * 'this Court examines statutory provisions in their entirety, attributing to [an] act the meaning most consistent with the policies and purposes of the Legislature.'" *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 681 (R.I.1999) (quoting *In re Advisory to the Governor (Judicial Nominating Commission)*, 668 A.2d 1246, 1248 (R.I. 1996)). "[W]e must give words their plain and ordinary meanings, [and] in so doing we must not construe a 'statute in a way that would result in "absurdities or would defeat the underlying purpose of the enactment."'" *Pelchat*, 727 A.2d at 681 (quoting *Matter of Falstaff Brewing Corp.*, 637 A.2d 1047, 1050 (R.I.1994)).

In *Penhallow v. Penhallow*, 649 A.2d 1016, 1021 (R.I.1994), we noted that, in enacting the Uniform Premarital Agreement Act, "[t]he Legislature * * * clearly evidenced the intent to preserve the validity of [premarital] agreements [and] * * * maintain[ ] the integrity of such agree-

ments." To that end, the Legislature placed a significant burden upon the party seeking to render the agreement unenforceable-that party must prove *all* of the elements in §§ 15–17–6(a)(1) and (2), and must do so by clear and convincing evidence. *See Penhallow*, 649 A.2d at 1021. Furthermore, the Act clearly provides that an antenuptial agreement "may be amended or revoked *only* by a written agreement signed by the parties." Section 15–17–5. (Emphasis added.)

We agree with defendant that the trial justice erred in concluding that the equitable distribution statute should determine the rights and liabilities of the parties in the instant case rather than the antenuptial agreement signed by the parties two days before they were married. In the instant case, plaintiff did not establish any of the elements required by § 15–17–6. Furthermore, there is no evidence in the record that the parties ever signed a written agreement either amending or revoking the antenuptial agreement that they had signed on December 17, 1997. Rather, the trial justice's conclusion that defendant had abandoned the provisions of the antenuptial agreement was based solely on the fact that defendant had moved for and received temporary support in the amount of $5,000. This, the trial justice concluded, violated "the intent, spirit, and unambiguous wording of the [antenuptial agreement,]" and evidenced defendant's intent to abandon its provisions.

In this case, the record clearly indicates that defendant did not abandon her rights under the antenuptial agreement. She filed an action in the Superior Court seeking specific performance of that agreement. When a justice of the Family Court enjoined her from proceeding with that action, she filed an amended counterclaim in the Family Court seeking relief pursuant to the antenuptial agreement. The trial justice, in response to a motion *in limine*, found as a fact that defendant's acceptance of a $5,000 payment did not

waive her right to enforce the agreement. Although the trial justice later came to a different conclusion, we are of the opinion that her first response was correct. The boilerplate language used by counsel for both parties regarding equitable distribution could not overcome the unequivocal and specific attempts made by defendant in both the Superior Court and the Family Court to enforce her rights under the antenuptial agreement. Consequently, we conclude that the trial justice was clearly wrong in finding as a fact that defendant had abandoned this agreement by accepting an advancement of $5,000.

For the reasons stated, the defendant's appeal is sustained. The judgment of the Family Court in respect to equitable distribution is reversed. The papers in the case are remanded to the Family Court with directions to enter a new judgment enforcing the parties' antenuptial agreement.